**NOTICE:  SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**FILED**
**MAY 16, 2023**
In the Office of the Clerk of Court
WA State Court of Appeals Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| TWIN W OWNERS' ASSOCIATION, a Washington non-profit corporation, | ) ) ) | No. 39299-6-III |
| Appellant, | ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| ANDREW MURPHY and JENNIFER MURPHY, a married couple, | ) ) ) | |
| Respondents. | ) ) | |

FEARING, C.J. —

Vacation rentals have catapulted in popularity over the past decade. While they were already favored by many savvy families looking for more space and more savings, vacation homes blossomed even more when millennial travelers took notice. These adventure-seekers started choosing one-of-a-kind stays over been-there-done-that hotel rooms. Now, even more people are desiring short-term rentals for another reason— as alternative accommodations to social distance and stay away from others. *What are the pros and cons of owning a vacation rental property?* VACASA, , https://www.vacasa.com/homeowner-guides/pros-cons-of-owning-vacation-rental-property (last visited May 5, 2023).

We swim across the Columbia River from Chelan County, the situs of the land in

*Wilkinson v. Chiwawa Communities Association*, 180 Wn.2d 241, 327 P.3d 614 (2014),

No. 39299-6-III
*Twin W Owners' Association v. Murphy*

to Douglas County, the location of the property in this appeal. We address the same question resolved by the Washington Supreme Court in *Wilkinson*: whether a homeowner association may amend its restrictive covenants to ban or highly regulate the use of a residence as a vacation rental. Since we are an intermediate appellate court, we decline to usurp our limited authority and to overrule Supreme Court precedent. We deem the precedent controlling in this appeal brought by Twin W Owners' Association. We affirm the superior court's summary judgment ruling, favoring homeowners Andrew and Jennifer Murphy, that declared amended restrictive covenants void. We also affirm a ruling by the superior court that awarded reasonable attorney fees and costs to the Murphys for work incurred before the state Supreme Court.

FACTS

Twin W Owners' Association (Twin W or homeowner association) is a Washington nonprofit corporation that governs ninety-four properties in rustic Douglas County. The properties oversee the prodigious Columbia River. In 2004, the homeowner association adopted and recorded a set of covenants, conditions, and restrictions encumbering all lots.

We quote some of the Twin W, then known as Twin WW Ranch, protective covenants relevant to this appeal. The 2004 covenants introduce, in an initial section labeled "preamble," a theme of maintaining a rural character and protecting property values:

2

No. 39299-6-III
*Twin W Owners' Association v. Murphy*

1.1  Sometimes there is a fine line drawn between protecting property owners and inhibiting their life style.  To fully understand the following protective covenants, it is necessary to examine the underlying theme or intent of Twin WW Ranch as a collection of properties: rural living with insured [sic] quality and protected life style in the midst of productive fruit orchards.

1.2  Twin WW Ranch lies in a rural setting offering small acreages with a tremendous view of the Columbia River.  The parcels were designed so the purchaser could feel comfortable in building a quality home and estate without fear of devaluation due to his neighbor's action.  In most cases, homes lack protection and are subject to devaluation.  However, Twin WW Ranch has the ability to protect itself from devaluation and insure increasing value for its homeowners.  More importantly, these covenants are designed to create and maintain a protected rural life style.

Clerk's Papers (CP) at 15.

The Twin W covenants constrain, in vague terms, some uses of a lot.

2.1  Reasonable Use.  No lot shall ever be used in a fashion which unreasonably interferes with the other lot owners' use and enjoyment of their respective properties.
. . . .
2.4  Offensive Activities.  No noxious or offensive activity shall be carried on upon any lot, nor shall anything be done or maintained thereon which may be, or become, an annoyance or nuisance, or adversely effect the use, value, occupation and enjoyment of any adjoining property in the development.
. . . .
2.12  Businesses.  No store or business shall be carried on upon said premises or permitted thereon which involves on-premises sales, or which constitutes a nuisance.

CP at 15-18.

The 2004 restrictive covenants address administration of the homeowner

association:

3

No. 39299-6-III
*Twin W Owners' Association v. Murphy*

> 3.1  Approval.  When these covenants require owner approval such approval shall be by sixty percent (60%) vote, with one vote per lot (a "Lot").
>
> 3.2  Amendment.  Amendment of these covenants shall be by sixty percent (60%) vote, with one vote per Lot.  Amendments shall be in writing and recorded in the same manner as these covenants.

CP at 18.  No provision expressly reserves to the homeowner association the power to add new covenants.  Finally, the 2004 covenants provide for an award of attorney fees to a substantially prevailing party in litigation:

> 3.4  Enforcement.  Enforcement shall be by proceedings at law or in equity against any person or persons violating or attempting to violate any covenant either to restrain violation or to recover damages.  The substantially prevailing party in any dispute of the enforcement of these covenants shall be entitled to recover reasonable attorney's fees.

CP at 19.

Enter Andrew and Jennifer Murphy.  In 2007, the Murphys purchased a lot within Twin W.  In 2009, the Murphys built a $1.2 million home on the lot for the purpose of generating income as short-term rental property.

Other Twin W homeowners complain about the rental nature of Andrew and Jennifer Murphy's residence.  A neighbor declared that, at times, as many as twenty people and a dozen cars have occupied the Murphys' rental property.  The large groups have partied late and emitted loud noise into the early hours of the morning.  On one New Year's weekend, renters exploded mortar fireworks between 1:00 a.m. and 1:20 a.m.  A call to the Murphys after the fireworks went unanswered.

4

No. 39299-6-III
*Twin W Owners' Association v. Murphy*

Renters of Andrew and Jennifer Murphy's vacation rental have deposited, in the road, garbage in excess of the residence's garbage can's capacity. The wind has blown the garbage into neighbors' lots. Murphy renters have also abandoned, on a boat dock, full gas cans at risk of being blown into the Columbia River.

In 2020, Twin W passed, by supermajority vote, new protracted covenants restricting and regulating short-term rentals. We quote most of the new covenants in order to illustrate their stretched and painstaking nature:

> 2.21 Short-Term Rental Properties. Pursuant to Section 1.1 (Preamble), Section 1.2 (Preamble), Section 2.1 (Reasonable Use), and Section 2.4 (Offensive Activity), the rental of Lots for periods of less than thirty days at a time to any person ("Short-Term Rental"), other than the rental of an accessory dwelling unit, shall be subject to the following regulations intended to protect the other Lot owners from unreasonable interference with their use and enjoyment of their Lots:
> In order to be eligible to engage in Short Term Rental activity, a Lot must have a completed residence constructed; no Lot without a completed residence shall engage in Short Term Rental activity (i.e.—no renting vacant lots, motorhomes, trailers, etc.). Commencing in 2021, prior to renting their properties, all Lot owners desiring to use their Lot for a Short-Term Rental shall apply to the Twin W board on or before October 15 of the year prior to renting for permission to engage in Short-Term Rentals for the upcoming calendar year, using an application to be provided by the Twin W board and paying the associated processing fee.
> For 2021, each applicant desiring to engage in Short-Term Rentals shall be granted permission by the Twin W board to do so. A Lot owner must continuously apply for a Short-Term Rental in each year, starting in 2021, or that Lot will forever lose its eligibility to be used as a Short-Term Rental. All Lots shall forever lose their eligibility to apply to engage in Short-Term Rentals upon a change of ownership (including a change in the ownership of shares or units in an entity that owns the Lot) that occurs after October 15, 2020. A Lot may also lose its eligibility to apply to engage in

5

No. 39299-6-III
*Twin W Owners' Association v. Murphy*

Short-Term Rentals upon violation of and pursuant to the Short-Term
Rental Rules and Regulations attached as Exhibit A.

Each Lot authorized to engage in Short-Term Rentals shall maintain
a policy of general liability insurance applicable to its Short-Term Rental
with limits of $1,000,000 per occurrence, and which names Twin W, Twin
W's association administrator at that time, and all Lot owners that
immediately surround the applicant's Lot as well as all Lot owners who
share joint use of a dock, as additional insureds. Each Lot authorized to
engage in Short-Term Rentals shall pay an administration fee to Twin W to
cover the additional expenses associated with oversight of the Short-Term
Rentals such that no general association dues paid by all Lot owners will be
used for administering Short-Term Rentals. No Lot owner shall rent any
portion of its Lot as a Short-Term Rental at the same time as it is rented as
an ADU [accessory dwelling unit] Rental.

Twin W adopts the Short-Term Rental Rules and Regulations
attached as Exhibit A and incorporated herein to govern Short-Term
Rentals, which may be amended by Twin W's board from time to time
upon written notice to Lot owners, but without a vote of the Lot owners, to
aid in the efficient administration of Short-Term Rentals, however, no
amendment of the Short-Term Rental Rules and Regulations shall change
the number of annual Short-Term Rentals without a vote of the Lot owners.

. . . 2.22 <u>Accessory Dwelling Unit Rental Properties.</u> Pursuant to
Section 1.1 (Preamble), Section 1.2 (Preamble), Section 2.1 (Reasonable
Use), and Section 2.4 (Offensive Activity), the rental of accessory dwelling
units on any Lot to any person ("ADU Rental") shall be subject to the
following regulations intended to protect the other Lot owners from
unreasonable interference with their use and enjoyment of their Lots:

Prior to renting their property, all Lot owners desiring to use their
Lot for an ADU Rental shall apply annually on or before October 1 to the
Twin W board for permission of an ADU Rental for the following calendar
year, using an application to be provided by the Twin W board. Up to five
Lots may be used as an ADU Rental in a given year. If Twin W receives
more than five timely ADU Rental applications, all applicants shall be
placed into a lottery and five Lots shall be chosen for approval for the
upcoming calendar year. Each ADU Rental applicant shall maintain a
policy of general liability insurance applicable to its ADU Rental with
limits of $1,000,000 per occurrence, and which names Twin W, Twin W's
association administrator at that time, and all Lot owners that immediately
surround the applicant's Lot as well as all Lot owners who share joint use

6

No. 39299-6-III
*Twin W Owners' Association v. Murphy*

of a dock, as additional insureds. Each ADU Rental applicant shall pay an administration fee to Twin W to cover the additional expenses associated with oversight of the ADU Rentals such that no general association dues paid by all Lot owners will be used for administering ADU Rentals. No Lot owner shall rent any portion of its Lot as a short term rental at the same time as it is rented as an ADU Rental. Lot owners are advised to refer to Douglas County Code 18.16.170, which provides, "The property owner (which shall include title holders and contract purchasers) shall occupy either the primary unit or the accessory unit as their permanent residence." Twin W adopts the ADU Rental Rules and Regulations attached as Exhibit A and incorporated herein to govern ADU Rentals, which may be amended by Twin W's board from time to time upon written notice to Lot owners, but without a vote of the Lot owners, to aid in the efficient administration of ADU Rentals, however, no amendment of the ADU Rental Rules and Regulations shall change the number of annual ADU Rentals without a vote of the Lot owners.

. . . .

2.23 <u>Prohibition of Leasing Residences to Multiple Tenants and Subleasing Residences.</u> No residence shall be leased to more than one tenant at any time. No residence shall be subleased.

CP at 36-38.

Lot owners in Twin W voted separately on each of the paragraphs of the new covenants rather than in the aggregate. Covenant 2.21 received sixty-two yes votes and twenty-three no votes. Covenant 2.22 received fifty-nine yes votes and twenty-seven no votes. Covenant 2.23 received seventy yes votes and fifteen no votes.

Other property owners in the homeowner association, besides Andrew and Jennifer Murphy, rent their property on short terms. In 2020, the Murphys' residence generated income of $103,171.

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 39299-6-III
*Twin W Owners' Association v. Murphy*

PROCEDURE

Following approval of the 2020 covenants, Twin W sought a declaratory judgment to declare the covenants enforceable. The homeowner association further sought injunctive relief against Andrew and Jennifer Murphy for noncompliance with the newly adopted covenants. In its complaint, Twin W referenced the 2004 covenants that prohibit nuisances and offensive activities. The complaint alleged that use of property for short-term vacation rentals had led to nuisances. Nevertheless, the complaint did not seek a declaration that the Murphys engaged in a nuisance.

Twin W, on the one hand, and Andrew and Jennifer Murphy, on the other hand, filed cross motions for summary judgment. Twin W's motion sought a declaration validating the 2020 restrictive covenants. The motion did not claim that the Murphys had violated provisions of the 2004 covenants.

The superior court granted partial summary judgment to Andrew and Jennifer Murphy and declared covenants 2.21, 2.22, and 2.23 void. The partial summary judgment order left outstanding some counterclaims advanced by the Murphys.

Twin W petitioned the Washington Supreme Court to accept direct review of the order granting Andrew and Jennifer Murphy partial summary judgment. The petition sought interlocutory review since counterclaims remained pending before the superior court. The Supreme Court commissioner denied the homeowner association's petition in a ruling that omitted any mention of an attorney fee award.

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 39299-6-III
*Twin W Owners' Association v. Murphy*

Andrew and Jennifer Murphy filed a motion to modify the Supreme Court commissioner's ruling. The motion sought an award of attorney fees incurred when answering Twin W's petition for discretionary review. In response to the motion to modify, the Supreme Court ruled "[t]hat the Appellant's motion to modify the Commissioner's ruling is denied." Br. of Appellant, App'x at 8.

The superior court subsequently granted Andrew and Jennifer Murphy's motion to dismiss their remaining claims. The court also entered an award of attorney fees for the Murphys. Over the objection of Twin W, the court's fee award included fees incurred by the Murphys in defending against the homeowner association's interlocutory petition to the Supreme Court but excluded fees incurred by the Murphys' motion to modify the commissioner's ruling.

In a second petition to the Supreme Court, Twin W Owners' Association requested direct review of the superior court's final judgment. The Supreme Court again denied the homeowners association's petition and transferred the appeal to this court.

LAW AND ANALYSIS

On appeal, Twin W seeks the overturning of *Wilkinson v. Chiwawa Communities Association*. In the alternative, the homeowner association asks us to distinguish the Washington Supreme Court precedent from the circumstances on appeal. We decline both requests. Finally, Twin W assigns error to the superior court's award of reasonable

9

No. 39299-6-III
*Twin W Owners' Association v. Murphy*

attorney fees and costs incurred for work performed in opposing direct and interlocutory

review by the Supreme Court. We affirm the attorney fees ruling.

Real Property Restrictive Covenants

*Issue 1: Should this court overrule the Washington Supreme Court's decision in*

Wilkinson v. Chiwawa Communities Association*?*

*Answer 1: No.*

Twin W Owners' Association wrote its appeal brief with the dream of the

Washington Supreme Court accepting direct review. The brief requests overruling of

*Wilkinson v. Chiwawa Communities Association*, 180 Wn.2d 241 (2014). In support of

overturning the precedent, Twin W emphasizes the explosion, since the issuance of the

*Wilkinson* decision in 2014, in short-term vacation rental properties. This eruption in a

new business model has prompted government entities to adopt laws and regulations

treating vacation rentals as bed and breakfasts, motels, and hotels. Twin W murmurs that

*Wilkinson* prevents it from reasonably regulating the business use of its properties in the

same manner as other local, state, and national regulatory bodies and to prevent an

ongoing nuisance.

Washington limits the authority of a simple majority of homeowners to adopt new

covenants or amend existing ones in order to place new restrictions on the use of private

property. *Wilkinson v. Chiwawa Communities Association*, 180 Wn.2d 241, 255-56

(2014). The law refuses to subject a minority of landowners to unlimited and unexpected

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 39299-6-III
*Twin W Owners' Association v. Murphy*

restrictions on the use of their land merely because the covenant agreement permitted a

majority to make changes to existing covenants. *Meresse v. Stelma*, 100 Wn. App. 857,

866, 999 P.2d 1267 (2000). The rule protects the reasonable expectations of landowners

to resist new deprivations to property rights. *Wilkinson v. Chiwawa Communities*

*Association*, 180 Wn.2d 241, 256 (2014). This court examines whether existing

covenants provide an "express reservation of power authorizing less than 100 percent of

property owners within a subdivision to adopt new restrictions respecting the use of

privately-owned property." *Shafer v. Board of Trustees of Sandy Hook Yacht Club*

*Estates, Inc.*, 76 Wn. App. 267, 273, 883 P.2d 1387 (1994).

In *Wilkinson v. Chiwawa Communities Association*, 180 Wn.2d 241 (2014), the

homeowner association covenants restricted lots to single family residences, banned the

use of any lot for commercial activity, and limited residents to a single six-foot yard sign

when advertising property sales or rentals. The covenants permitted the homeowner

association to change the protective restrictions and covenants in whole or in part by

majority vote. In 2008 and again in 2011, a majority of the homeowner association

members voted to prohibit short-term rentals.

In a 5 to 4 decision, the Supreme Court, in *Wilkinson v. Chiwawa Communities*

*Association*, announced two distinct holdings. The court first held that restrictive

covenants that bar commercial use of residences and restrict lots to single-family

residences do not prohibit short-term rentals particularly when the covenants limit the

11

No. 39299-6-III
*Twin W Owners' Association v. Murphy*

size of rental signs. In so ruling, the Supreme Court sought to divine the 1988 covenant

drafter's intent as to the allowance of short-term vacation rentals. The dissent rightly

criticized this ruling. A court might have an easier task in attempting to discover whether

the drafters of the Bill of Rights intended for wiretaps to qualify as searches and seizures

under the Fourth Amendment to the United States Constitution or in endeavoring to

discern whether the framers of the Bill of Rights would classify a hydrogen bomb as an

"arm" for purposes of the Second Amendment. No one in 1988 expected family

residences to become hotels.

The Supreme Court, in *Wilkinson v. Chiwawa Communities Association*, also

ruled that language in covenants allowing a majority of homeowners to "change" or

"amend" the protective covenants did not permit the majority to "create" or record "new"

covenants. Under the majority's holding, the majority of Chiwawa Communities

homeowners could not approve an amended covenant that precluded rentals for terms less

than thirty days because the covenant did not modify or relate to a 1988 covenant. In so

holding, the court impliedly rejected the former principle that sanctioned the adoption of

additional covenants by majority vote, regardless of whether the covenant was "new" or a

"modification" as long as the covenant coincided with the original general plan of

development. *Meresse v. Stelma*, 100 Wn. App. 857, 865-66 (2000). This former rule

assumed that the initial covenants allowed changes by majority vote.

12

No. 39299-6-III
*Twin W Owners' Association v. Murphy*

In this appeal, Twin W does not challenge the first holding of the Supreme Court in *Wilkinson v. Chiwawa Communities Association*. Indeed, the universal rule is that use of property for short-term vacation rentals does not transform a home from residential use to commercial use for purposes of covenants restricting commercial use. *Wilson v. Maynard*, 2021 S.D. 37, 961 N.W.2d 596; *Kinzel v. Ebner*, 2020-Ohio-4165, 157 N.E.3d 898 (Ct. App.); *Forshee v. Neuschwander*, 2018 WI 62, 381 Wis. 2d 757, 914 N.W.2d 643; *Tarr v. Timberwood Park Owners Association*, 556 S.W.3d 274 (Tex. 2018); *Houston v. Wilson Mesa Ranch Homeowners Association, Inc.*, 2015 COA 113, 360 P.3d 255; *Russell v. Donaldson*, 222 N.C. App. 702, 731 S.E.2d 535 (2012). This court had previously ruled that covenants restricting property to single family residences did not preclude the use of the property for vacation rentals. *Ross v. Bennett*, 148 Wn. App. 40, 203 P.3d 383 (2008).

Twin W asks this court to overrule the second holding in *Wilkinson v. Chiwawa Communities Association*. Nevertheless, once the state Supreme Court has decided an issue of state law, we are bound by that interpretation until it is overruled by the Supreme Court. *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984).

Twin W further argues that the *Wilkinson* Court's "new" versus "modified" covenant restriction analysis creates erroneous results and should be rejected. The dissent in *Wilkinson* expressed the same thought. The dissent wisely wondered about the location of the line between where a "creation" ends and a "change" begins. God crafted

13

No. 39299-6-III
*Twin W Owners' Association v. Murphy*

changes when he or she created the heavens and the earth and all that in them is. Twin W asks us to adopt Idaho's "unconscionable harm" standard when determining the validity of changes to homeowner association restrictive covenants. Idaho draws no definitive distinction between an association's adoption of a new restriction and the modification of existing restrictions. *Adams v. Kimberley One Townhouse Owner's Association*, 158 Idaho 770, 775, 352 P.3d 492 (2015). We deem this second request a restatement of the homeowner association's entreaty to overrule the entire *Wilkinson* decision and thus also reject this additional request.

Issue 2: Are Twin W's amended restrictive covenants void? Stated differently, did the superior court correctly grant Andrew and Jennifer Murphy summary judgment?

Answer 2: Yes.

In an attempt to validate its 2020 covenants, Twin W seeks to distinguish its covenants from the covenants addressed in *Wilkinson v. Chiwawa Communities Association* or to assert arguments never posited by the Chiwawa Communities Association. We assemble Twin W's arguments into five contentions.

First, Twin W emphasizes that no language in the 2004 covenants relates to rental activity by lot owners. Twin W distinguishes *Wilkinson v. Chiwawa Communities Association*, because the Supreme Court, in *Wilkinson*, reasoned that the homeowner association covenants demonstrated that the original drafters anticipated and permitted rentals when they restricted the size of rental signs residents could hang. Based on this

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 39299-6-III
*Twin W Owners' Association v. Murphy*

reading, the high court concluded that Chiwawa covenants permitted rentals without any durational limitation. According to Twin W, since its 2004 covenants did not expressly mention rentals, the covenants impliedly precluded rentals. At least, according to Twin W, no one should complain if later covenants restrict rentals.

We deem Twin W's first argument to harm, rather than benefit the homeowner association. Assuming the 2004 covenants failed to mention any rental of property, the 2020 covenants, seeking to restrict short-term rental activity, move further in the continuum toward new covenants, not amendments to any existing covenants. The Supreme Court, in *Wilkinson v. Chiwawa Communities Association*, ruled that, when a later covenant lacks a relationship to the initial covenants, the later covenant creates a new covenant, not an amendment to the covenants.

Second, Twin W contends that the 2004 covenants' broad provisions requiring reasonable lot use and prohibiting nuisances give lot owners reasonable notice that the homeowner association could subject short-term vacation rentals to further regulation. To the contrary, in *Wilkinson*, the Supreme Court held that covenants prohibiting a nuisance would not have placed homeowners on notice that short-term rentals might later be prohibited. Twin W's 2004 covenants similarly lack a nexus to the subject of short-term rentals to qualify the 2020 covenants as amendments.

Third, Twin W contrasts its 2020 covenants' requirements phasing out short-term vacation rentals with Chiwawa Association's covenant that would have banned short-

15

term vacation rentals altogether and immediately. Nevertheless, under *Wilkinson*'s rule, a mere majority of voters cannot pass any new restriction on rental activity. Twin W cannot avoid this rule merely because the 2020 covenants do not impose an immediate and total ban on rentals.

Fourth, Twin W argues the 2020 covenants fulfill the community's general plan of development promulgated in the 2004 covenants' preamble. While *Wilkinson* frequently referenced the "general plan" of the Chiwawa Community Association development, we consider the meaning of the phrase murky. We do not read Twin W's 2004 covenants' ethereal references to rural living as imposing restrictions on lot owners' ability to lease their property. We note that the homeowner association did not offer any evidence that the Murphys' short-term rentals devalued neighboring properties.

Fifth, Twin W maintains that a covenant provision, separated from section 3.2 addressing amendments, granted authority to implement a new restrictive covenant with approval of sixty percent of the owners. Covenant 3.1 provides:

> Approval. When these covenants require owner approval such approval shall be by sixty percent (60%) vote, with one vote per lot (a "Lot").

CP at 18. According to Twin W, if paragraph 3.2 did not grant authority to adopt a new covenant with a sixty percent vote, paragraph 3.1's language, addressing owner approval in general, did. We disagree.

16

No. 39299-6-III
*Twin W Owners' Association v. Murphy*

This court applies rules of contract interpretation to restrictive covenants with the goal to ascertain and give effect to the purposes intended by the covenants. *Wilkinson v. Chiwawa Communities Association*, 180 Wn.2d 241, 249-50 (2014). When determining intent, we give covenant language its ordinary and common meaning. *Riss v. Angel*, 131 Wn.2d 612, 621, 934 P.2d 669 (1997). To interpret this individual provision, this court must consider the document in its entirety. *Mountain Park Homeowners Association v. Tydings*, 125 Wn.2d 337, 344, 883 P.2d 1383 (1994). This court owes no deference to a homeowner association's interpretation of its governing documents. *Bangerter v. Hat Island Community Association*, 199 Wn.2d 183, 188, 504 P.3d 813 (2022).

Twin W covenant 3.1 outlines a process in the event "these covenants require owner approval." CP at 18. A scan of other covenants reveals that owner approval is sometimes required for Twin W action. For example, an owner may only store large construction equipment on a lot for one year unless the homeowner association approves a longer period. Twin W may seek injunctive relief against a lot owner for failure to pay costs of repair, replacement, and maintenance of common amenities only if such legal action is approved by the homeowner association members. When we read the 2004 restrictive covenants in their entirety, we conclude the drafters intended covenant 3.1 to address these discrete circumstances, not the adoption of new covenants.

We share Twin W's concern that the 2004 covenants never contemplated the use of land within the association for short-term vacation rentals. No one expected a

17

No. 39299-6-III
*Twin W Owners' Association v. Murphy*

burgeoning short-term vacation rental industry. We recognize that long-term tenants more likely live in harmony with neighbors and treat the property better than vacation renters. These concerns were highlighted in Justice Madsen's astute dissent in *Wilkinson v. Chiwawa Communities Association*. We share Twin W's concern about the traffic and noise attended to vacation rentals. We remain bound, however, by the Supreme Court's *Wilkinson* ruling.

Twin W did not contend, in its complaint, that Andrew and Jennifer Murphy violated 2004 covenants that prohibit nuisances or that restrict property uses that devalue neighboring residences. We render no decision as to the applicability of the nuisance prohibition in the 2004 restrictive covenants to the Murphys' use of their residence. We also note the possibility that Twin W could amend the 2004 nuisance covenants by a sixty percent vote under paragraph 3.2 of the covenants in order to address problems inherent in short-term rentals. We issue no opinion as to whether such amendments would be deemed modifications to the covenants rather than new covenants.

Attorney Fees

*Issue 3: When the Supreme Court denies direct review without deciding whether to award the opposing party reasonable attorney fees and costs, may the superior court award the opposing party reasonable attorney fees and costs incurred in defending against direct review when a contract provision allows the prevailing party an award and the opposing party prevails before the superior court?*

18

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 39299-6-III
*Twin W Owners' Association v. Murphy*


*Answer 3: Yes.*

Twin W seeks reversal of the superior court's attorney fee award relating to the costs the Murphys incurred when responding to the homeowner association's petition for direct, discretionary, and interlocutory review by the Supreme Court. Twin W believes the trial court lacked authority to award fees incurred during an appeal to the Supreme Court. Twin W highlights that the Supreme Court declined to award attorney fees in both the court commissioner's initial ruling denying review and the subsequent denial of the Murphys' motion to modify, which latter motion explicitly advanced an attorney fee argument. Twin W characterizes the superior court's ruling granting fees as a violation of the Supreme Court's mandate.

When Twin W petitioned for direct review from the trial court's interlocutory order, the Supreme Court considered the question of whether to accept discretionary review under RAP 2.3. The Supreme Court did not expressly consider whether to grant Andrew and Jennifer Murphy fees incurred in objecting to review.

This attorney fees dispute poses an esoteric question that requires a convoluted review of appellate rules. Thankfully, other case law precedes us. Twin W Owners advances *Thompson v. Lennox*, 151 Wn. App. 479, 212 P.3d 597 (2009), in support of its argument that the superior court lacked authority to grant attorney fees for work performed in the Supreme Court. In response, Andrew and Jennifer Murphy forward

19

No. 39299-6-III
*Twin W Owners' Association v. Murphy*

*Emerick v. CSC*, 189 Wn. App. 711, 357 P.3d 696 (2016). We deem *Emerick v. CSC* more on point.

In *Thompson v. Lennox*, 151 Wn. App. 479 (2009), Don Thompson and Sheri Nimmo appealed the superior court's decision in favor of Mary Lennox. Thompson and Nimmo claimed their neighbor Lennox violated an open-air easement. The superior court, pursuant to a contract provision, granted Lennox reasonable attorney fees and costs incurred. Thompson and Nimmo appealed the judgment in favor of Lennox. The Court of Appeals dismissed the appeal when Thompson and Nimmo failed to timely file an opening brief.

Two months after dismissal of the appeal, Mary Lennox brought a motion in the superior court for an award of attorney fees incurred during the pendency of the appeal. Lennox relied again on the contract provision for an award of fees to the prevailing party. Don Thompson and Sheri Nimmo objected to an award and argued that the superior court lacked authority to grant an award. The superior court awarded Lennox the additional fees. Thompson and Nimmo appealed once again. This court agreed that the superior court lacked authority to award Lennox the fees.

When reversing the award of reasonable attorney fees and costs incurred by Mary Lennox during the earlier abandoned appeal, the court, in *Thompson v. Lennox*, framed the issue as whether the superior court, as opposed to the Court of Appeals, held authority to award fees incurred during the first appeal. Lennox argued that the Rules of Appellate

20

No. 39299-6-III
*Twin W Owners' Association v. Murphy*

Procedure never contemplated which court should address a request for fees under the circumstance when the appellant forsakes the appeal. This court reviewed subsections of RAP 18.1. RAP 18.1(a) provides that, if applicable law grants a party the right to recover reasonable attorney fees or expenses on review, the party "must request the fees or expenses as provided in this rule, unless a statute specifies that the request is to be directed to the trial court." The party seeking appellate fees "must" devote a section of its opening brief to the request for the fees or expenses. RAP 18.1(b). If the party has yet to file a brief, the request "must" be included in a motion. RAP 18.1(b). Within ten days after the filing of a decision awarding a party the right to reasonable attorney fees and expenses on appeal, the party being awarded fees "must" serve and file in the appellate court an affidavit detailing the expenses incurred and the services performed by counsel. RAP 18.1(d). The clerk "will include the award" of attorney fees and expenses in the mandate, the certificate of finality, or in a supplemental judgment. RAP 18.1(h).

The Court of Appeals rejected Mary Lennox's argument that she lacked an opportunity to request fees in the Court of Appeals because of the abandonment of the appeal before she could file her brief. The court answered that RAP 18.1 demands that a party seeking fees on appeal do so before the appellate court. Although Lennox had yet to file a brief at the time of the appeal dismissal, she could have filed a motion within ten days. Despite the court issuing a mandate after the abandonment, the Court of Appeals retained jurisdiction to address requests for fees. RAP 12.7(a).

21

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 39299-6-III
*Twin W Owners' Association v. Murphy*

Twin W's circumstances differ from the facts presented in *Thompson v. Lennox*. Andrew and Jennifer Murphy asked for an award of reasonable attorney fees and costs before the Supreme Court. The Supreme Court did not address the request because it never accepted review. An award by the high court would have been premature because claims remained pending before the superior court. No court could identify the prevailing party until the completion of the entire suit.

In *Emerick v. Cardiac Study Center, Inc.*, 189 Wn. App. 711, 357 P.3d 696 (2015), a cardiologist sued his former practice to invalidate a noncompete clause. The superior court first voided the clause in its entirety. On appeal, this court reversed and remanded to the superior court to narrow the clause to a limited geographic territory and limited time period. The cardiology practice did not then ask the Court of Appeals for an award of fees because it did not consider itself to be the prevailing party since the court ordered further proceedings before the superior court.

The superior court on remand granted, pursuant to a contract provision, the Cardiac Study Center reasonable attorney fees incurred in the superior court, but not fees incurred before the Court of Appeals in obtaining the reversal in the first appeal. The superior court reasoned that it lacked jurisdiction to award fees on appeal. The superior court also reasoned that the Court of Appeals had denied an award during the first appeal. Cardiac Study Center appealed the denial of its attorney fees incurred during the first appeal. This court reversed and granted the cardiology practice its request. This court

22

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 39299-6-III
*Twin W Owners' Association v. Murphy*

reasoned that, after the reversal in the first appeal, no one yet knew the prevailing party in the underlying action. This court remanded to the superior court to determine a reasonable sum for fees incurred during both the first and the second appeal.

Twin W covenants provide for an award of attorney fees to the substantially prevailing party. When the Supreme Court reviewed the interlocutory filings, the court did not know which party would ultimately prevail on remand. The Supreme Court never issued a ruling denying attorney fees. Unlike in *Thompson*, the initial appeal to the Supreme Court did not terminate the case, and no untimeliness infected the Murphys' fee request.

*Issue 4: Whether this court should award a party reasonable attorney fees and costs incurred on appeal?*

*Answer 4: Yes. This court should award Andrew and Jennifer Murphy reasonable attorney fees and costs.*

Both parties request attorney fees incurred before this court under RAP 18.1 and section 3.4 of the 2004 covenants entitling a substantially prevailing party to attorney fees. Because Andrew and Jennifer Murphy prevail on all issues in this appeal, we award them appellate attorney fees.

CONCLUSION

We affirm the summary judgment order that declares the 2020 restrictive covenants void. We affirm the superior court's previous award of reasonable attorney

23

No. 39299-6-III
*Twin W Owners' Association v. Murphy*


fees and costs to the Murphys and grant the Murphys reasonable attorney fees and costs

on appeal.

_____
Fearing, C.J.

I CONCUR:

_____
Siddoway, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 39299-6-III

LAWRENCE-BERREY, J. (concurring) — I write separately to allay a valid concern of homeowners' associations faced with individual owners using their properties for short-term rentals. Protective covenants routinely prohibit owners from using their property in a manner that constitutes a nuisance to other owners. The solution is to amend the nuisance covenant so that short-term rentals do not become a nuisance.

For example, the covenant may be amended to require owners using their property as short-term rentals to have an on-site representative to timely address nuisance complaints and that a failure to properly address a nuisance complaint as determined in the sole discretion of a designated committee subjects the owner to a fine that may be recorded as a lien against the property if not paid within a certain period of time. The amended covenant can specify restrictions of who can serve as the on-site representative, how the committee is comprised, how notice and hearings of the committee are held, the range of fines and whether and how they may increase upon successive violations, and the manner in which liens may be foreclosed. As a caution to homeowners' associations, a court's willingness to enforce the covenant will largely depend on its overall fairness, including how it is administered in individual situations.

_____
Lawrence-Berrey, J.