COURT OF APPEALS
DECISION
DATED AND FILED

September 4, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.**

**Appeal No. 2023AP58**

**STATE OF WISCONSIN**

Cir. Ct. No. 2001IN131

**IN COURT OF APPEALS
DISTRICT III**

IN RE THE ESTATE OF RAYMOND J. KAISER:

ARNOLD R. KAISER AND KATHERINE G. CHRISTECK,

   APPELLANTS,

V.

TOWNLINE CTH-N LLC AND CHRISTINE OLSEN, SUCCESSOR PERSONAL REPRESENTATIVE FOR THE ESTATE OF RAYMOND J. KAISER,

   RESPONDENTS.

APPEAL from an order of the circuit court for Marathon County: MICHAEL K. MORAN, Judge. *Reversed.*

Before Stark, P.J., Hruz and Gill, JJ.

¶1 HRUZ, J. Arnold Kaiser ("Arnold") and Katherine Christeck ("Katherine") (collectively, "the Heirs") appeal an order striking a deed restriction limiting the use of real property that had belonged to their father, Raymond Kaiser

("Raymond"). After Raymond's death in 2001, his Estate sold the property to a third party in 2002 subject to the deed restriction. The property was ultimately purchased by Townline CTH-N LLC ("Townline") in 2019. Fifteen years after the Estate had closed in 2005, Townline sought to reopen the Estate to have the circuit court remove the deed restriction by challenging the personal representatives' authority to include it when selling the property.

¶2 The Heirs argue in their appellate briefs that Townline lacks standing to reopen the Estate; the personal representatives had authority to place the restriction on the property when it was sold; and, even if they did not have such authority, the circuit court erroneously struck the restriction as a remedy. We do not directly address the Heirs' arguments in these regards, although our focus implicates some of their arguments. Instead, and following an oral argument, we reverse the court's order on the ground that public policy bars Townline's untimely motion to reopen the Estate to pursue its claim.

¶3 Public policy calls for finality in estate administration as well as having a sensible and just stopping point for challenging closed estates. Here, a combination of factors leads us to conclude, as a matter of law, that such finality outweighs a decision on the merits of Townline's current challenge to the administration of the Estate. Specifically, we consider: (1) the amount of time that passed between the closing of the Estate and Townline's motion to reopen; (2) Townline's having had no interaction with the Estate, paired with the relief that Townline sought by reopening the Estate; (3) the alternative method available for Townline to obtain that or similar relief; and (4) intervening circumstances that have made it inequitable to reopen the Estate for the specific relief sought. All of these factors weigh against disturbing the finality of an estate administration that closed a decade and a half earlier.

## BACKGROUND

¶4      Raymond died on March 26, 2001, and was survived by his two children, Arnold and Katherine.[1]   In August 2001, Arnold and Attorney F.E. Bachhuber, Jr., filed an application for informal administration of the Estate and sought their designation as co-personal representatives.[2]   On the application, both Arnold and Bachhuber attested, under oath, that they "made diligent inquiry" and were "unaware of any unrevoked will of the decedent and believe[d] that the decedent died leaving no will."  They were appointed as co-personal representatives of the Estate, but Bachhuber handled the administration of the Estate.

¶5      The Estate's assets included two adjacent parcels of real property in Wausau, Wisconsin: a 1.1-acre parcel with a house and a barn ("the House Property"), and an approximately thirty-four-acre parcel of vacant farmland ("the Property").  In July 2002, Bachhuber sent a letter to Arnold with appraisals for the two parcels completed by George Woodrich.[3]   The appraisals valued the House Property at $50,000 and the Property at $275,125.  The Estate's inventory listed the combined value of the two properties.

¶6      In September 2002, William Schumacher "and/or [his] assigns" made an offer to purchase the Property from the Estate for $300,000.  In the offer, Schumacher agreed to a deed restriction "allowing that the property, if developed in the future, will only be developed as single family residential or residential condominium."  Arnold informed Bachhuber that he had received Schumacher's

---

[1]  Raymond's wife predeceased him in 1977.

[2]  Attorney Bachhuber died in June 2016.

[3]  Woodrich is also deceased.

offer to purchase the Property and that Arnold wanted to accept the offer with some additional changes proposed by him and Katherine. One of the requested changes was to include a deed restriction "limiting future use to agricultural or single family homes *only*, no condos, townhomes, apartments, industrial, etc. This is required to match future use to the existing development around the farm." Ultimately, Arnold and Bachhuber made a counteroffer to Schumacher proposing that the deed restriction be changed to limit future use of the Property to "single family residential use only."

¶7　　On November 27, 2002, the Estate sold the Property to Billgee LLP ("Billgee"), an assignee of Schumacher, for $300,000. On the same day, Bachhuber conveyed the Property to Billgee by a personal representative's deed. The deed included the restriction at issue here ("the Restriction"), which read: "THE USE OF THE PROPERTY HEREBY CONVEYED IS RESTRICTED TO SINGLE FAMILY RESIDENTIAL OR AGRICULTURAL USAGE ONLY. THIS RESTRICTION RUNS WITH THE LAND."

¶8　　In November 2003, Bachhuber conveyed the House Property to Katherine also by a personal representative's deed.[4] This deed did not include any restriction on the House Property's use. Katherine received the House Property as an Estate distribution, but she never moved into the property. She eventually sold and conveyed the House Property in November 2006 to Paul and Melissa Schmidt for $104,000.[5] The deed for this sale included a restriction similar to the Restriction

---

[4] At some point before the sale of the Property in 2002, its size was reduced to approximately thirty-three acres, and the House Property's size was conversely increased to 2.2 acres. This change was done because Katherine wanted to own the House property with it being 2.2 acres in size, instead of the original 1.1 acres.

[5] At a July 2022 hearing, Katherine testified that she sold the House Property because her husband's health had deteriorated and they would be unable to maintain the property.

in the deed conveying the Property to Billgee. The House Property restriction provided that "the use of the property hereby conveyed is restricted to single family residential or agricultural use only. This restriction shall be permanent, and shall be a covenant running with the land."

¶9 The Estate was completely administered and closed in July 2005. The Property subsequently went through several sales and transfers between 2006 and 2019. In January 2006, Billgee sold and conveyed the Property to WM Development LLC ("WM Development"). Before this sale, however, the Property was assembled with other parcels in the neighborhood into a single lot of 81.76 acres. The single, assembled lot was sold to WM Development for $1,962,500. In April 2013, and as a result of a foreclosure, WM Development conveyed portions of the lot that were undeveloped or sold, which included the Property, to ABS 1 LLC, a wholly owned subsidiary of Investor's Community Bank ("ABS 1"). ABS 1 sold each of the other undeveloped or unsold portions of the lot before it sold the Property. In March 2019, ABS 1 sold and conveyed the final piece of the lot—the Property—to Townline for $210,000.

¶10 In September 2020, Townline moved to reopen the Estate, questioning the legal basis for the Restriction and seeking a determination of the personal representatives' authority to place the Restriction on the deed to the Property. If the personal representatives had no such authority, Townline requested that the circuit court strike the Restriction. Several rounds of briefing then occurred, in which both the Heirs and Townline raised various arguments regarding whether the Estate should be reopened and whether the personal representatives had the authority to include the Restriction when the Estate sold the Property. In one of the briefs, the Heirs' counsel noted his discovery of Raymond's Will ("the Will") in Bachhuber's old file relating to the Estate. The Will is dated December 18, 1992, and one of the

5

provisions left the "rest and residue" of the Estate to Arnold and Katherine "in equal shares." The Will did not include any language indicating Raymond's desire for a restriction on the Property's use.

¶11    In addition to arguing that the personal representatives had authority to place the Restriction on the Property, the Heirs argued that the Estate should not be reopened for several reasons. First, the Heirs contended that numerous statutes of limitations prevented reopening the Estate, including WIS. STAT. §§ 865.18-865.19 (2021-22),[6] WIS. STAT. § 893.43, and WIS. STAT. § 706.09(1)(f). Second, the Heirs argued that Townline did not have standing to reopen the Estate because Townline was not a "person interested" as defined in WIS. STAT. § 851.21(1), and Townline had no connection to the Estate. Third, the Heirs asserted that laches barred Townline from reopening the Estate because: (1) for the past eighteen years, the Property had been sold and purchased by several parties who never claimed that the Restriction was invalid; (2) Townline knew about the Restriction when it purchased the Property; and (3) the Heirs were prejudiced by having to incur fees to prove the Restriction's validity in an estate that was closed in 2005.

¶12    Finally, the Heirs argued that WIS. STAT. §§ 806.07 and 879.31 did not allow Townline to reopen the Estate and that the "facts and equities of the case favor finality." The Heirs acknowledged that when an informally administered estate concludes, it is not closed by a final judgment but, rather, by stipulation or agreement of the personal representative and the interested parties. In any event, the Heirs contended that the Restriction was not a mistake and that no fraud or

---

[6] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

misconduct had occurred. *See* § 806.07(1)(a), (c). Even if fraud or misconduct had occurred, the Heirs asserted that those claims were barred under the one-year limitations period in § 806.07(2).

¶13 Further, the Heirs argued that Townline had failed to allege "other reasons justifying relief" and that Townline had not brought its motion to reopen within a reasonable time. *See* WIS. STAT. § 806.07(1)(h), (2). Specifically, the Heirs contended that the circumstances of this case were not extraordinary or unique because the Property was sold and purchased by subsequent parties that never questioned the Restriction's validity and because Townline purchased the Property with knowledge of the Restriction.

¶14 Townline, in contrast, argued that none of the statutes of limitations cited by the Heirs applied to the relief Townline was seeking and that, even if they did apply, those statutes contained fraud exceptions. Townline also argued that the Heirs had no standing to challenge Townline's motion because the Heirs never owned the Property, had not resided in Wisconsin for several years, and were no longer "persons interested" under WIS. STAT. § 851.21(2). As to laches, Townline argued that it did not unreasonably delay in bringing its motion to reopen because it did so approximately eighteen months after it purchased the Property and that the Heirs had not suffered any prejudice as a result of that delay.

¶15 Townline further contended that neither WIS. STAT. § 806.07 nor WIS. STAT. § 879.31 applied to the relief it sought because the Estate was closed by a sworn statement from the personal representative rather than a final order or judgment; therefore, the Estate's closing did not constitute a final judgment or order to which § 806.07 could apply. Assuming a final order or judgment was entered for the Estate, Townline asserted that this case did present extraordinary and unique

circumstances justifying relief pursuant to §§ 806.07(1)(h) and 879.31. Those circumstances, it argued, were: (1) that Arnold, as a personal representative, directed Bachhuber, the co-personal representative, to exceed his authority by placing the Restriction on the Property based on Arnold's belief that the Restriction was what Raymond would have wanted; and (2) that Arnold filed a sworn statement that the Will did not exist when, in fact, Arnold knew that there was a Will and that it was never filed. Townline further claimed that Arnold's conduct regarding the Will raised an inference of fraud and that, based on this conduct, the Restriction was void ab initio. Finally, Townline argued that it brought its motion within a reasonable time because, again, it moved to reopen the Estate approximately eighteen months after purchasing the Property.

¶16    It appears that the circuit court orally granted Townline's motion to reopen the Estate at a March 15, 2021 hearing and subsequently issued a written order granting the motion. The transcript of the March 15 hearing, however, is not part of the record on appeal. Thus, we do not know the specific basis on which the court granted the motion to reopen. At oral argument, the parties were asked to recount that reasoning, but both the Heirs and Townline responded only that the court had decided the issue early on in the case at a separate hearing.

¶17    At subsequent hearings in April 2021 and July 2022, Arnold testified about his earlier discovery of the Will. Arnold stated that when Raymond died, he searched for a will in Raymond's safe deposit box, in Raymond's desk, and throughout Raymond's house, but he could not find one. At some point after the sale of the Property but before the Estate was closed, he found the Will in his own safe deposit box. Arnold immediately sent the Will to Bachhuber, but neither of them ever filed it in the Estate proceedings.

¶18 At the April 2021 hearing regarding the appointment of a personal representative and the discovery of the Will, the circuit court reasonably expressed its concerns with Arnold's tardy discovery of the Will and Bachhuber's failure to file the Will. Because of those concerns, the court disqualified Arnold and Katherine as personal representatives based on "either an unknowing complicity or a knowing complicity with what I think was bad faith by not filing the [W]ill at the time and by not even afterwards presenting [the Will] as required under the statute." The court then appointed Attorney Christine Olsen as successor personal representative to the Estate.

¶19 In July 2022, the circuit court held an evidentiary hearing regarding the validity of the Restriction. Arnold testified that he and Katherine wanted to include a restriction limiting future use of the Property to agricultural or single-family homes because that use was what their parents wanted.[7] Upon questioning from the court, Arnold testified that he and Bachhuber discussed deeding the Property directly to the Heirs and then selling the Property, but Bachhuber told him it would be a "waste of money" to do so. On cross-examination, Arnold testified that neither he nor Bachhuber made any significant efforts to obtain a better purchase price than what Schumacher offered for the Property. Katherine testified about her desire to own the House Property and how she eventually sold it to the Schmidts. She further testified that Arnold had informed her of the Will, but she could not recall when he did so.

---

[7] Arnold had also testified to this desire on the part of his parents at the April 2021 hearing. Specifically, Arnold testified that he "asked Mr. Bachhuber if there was a way to honor the interest of my parents, both my mother and father, that the land be used either as a farm or single family homes and he said yes, there is."

¶20 Finally, Gary Guerndt, the sole member of Townline, testified that he knew about the Restriction before buying the Property and that, before purchasing the Property, Townline had two title companies examine the Restriction. Based on those investigations, Guerndt testified that he believed the Restriction "was put on in the wrong process and it wasn't legally binding." Despite his belief that the Restriction was invalid, Guerndt further testified that its existence did not impact the price he paid for the Property. He stated that the plan for the Property was for mixed-use development and that he wanted to check if the Restriction was valid before starting to develop the Property because he did not want to start developing, have someone contest the development, and then get "shut down." Guerndt further testified that neither the Restriction nor his belief in its invalidity affected his decision to buy the Property.

¶21 The circuit court issued a written decision striking the Restriction. The court concluded that the original personal representatives exceeded their authority by placing the Restriction on the Property. The court also found that the personal representatives did not act with due diligence to obtain the highest price for the Property and failed to establish that the Restriction increased the Property's value. The Heirs now appeal.

## DISCUSSION

¶22 Townline asks us to affirm the circuit court's order granting Townline's request to strike the Restriction. As noted, this order followed the reopening of the Estate—which had been closed for fifteen years—and resolved Townline's challenge to the personal representatives' authority to place the Restriction on the Property and the Restriction's overall validity. We are not aware of any controlling precedent addressing a motion by a party that acquires real

property previously sold by an estate to reopen that estate in order to challenge anything related to that property. We are also unaware of any case law from other jurisdictions in which such a situation has been addressed. There also appears to be little case law, if any, regarding if and when a motion to reopen an estate is too late in time after an estate closes.

¶23 Initially, both the Heirs and Townline argued on appeal whether Townline had standing to challenge the Estate's administration, but they focused most of their briefing on the merits of the challenge—i.e., the validity of the Estate including the Restriction in the deed and whether the circuit court's remedy striking the Restriction was appropriate. We requested oral argument from the parties on standing and other issues that we believed were implicated in this seemingly novel case. As explained herein, we base our decision largely on matters discussed during oral argument.

¶24 At oral argument, Townline stated that it sought to reopen the Estate for the limited purpose of removing the Restriction, not to challenge the entire administration of the Estate. Townline argued that, from a policy standpoint, it sought to preserve the integrity of the earlier, informal probate proceedings by holding the personal representatives to their duty to follow Raymond's intent, which was silent regarding any restrictive covenant on the Property. The Heirs, on the other hand, argued that allowing Townline to reopen the Estate now to remove the Restriction would call into question the finality of any estate. According to the Heirs, the result would be that estates would always "be open" and subject to readministration.

¶25 Townline and the Heirs present valid, competing concerns with allowing challenges to estate administration under the circumstances present in this

case. Ultimately, we conclude that there must be a sensible and just point when challenges to estate administration end. Public policy calls for eventual finality in estate administration, and, in this situation, we conclude that public policy bars Townline's claim challenging the administration of the Estate. In reaching this conclusion, we find support in the probate statutes addressing the importance of completing estate administration in a timely manner, the emphasis on finality when determining whether to reopen judgments under WIS. STAT. § 806.07, the factors considered in reopening judgments under § 806.07(1)(h), and the equitable doctrine of laches.

¶26 To be sure, we are sensitive to the importance of the underlying legal rights at issue, including otherwise potentially valid claims aimed at protecting those rights. In reaching our holding, we pass no judgment on the underlying merits of the parties' claims or defenses, as well as on the circuit court's decisions regarding those issues. We conclude only that Townline's challenge, in this case, has come too late.

## I. Probate procedures in general

¶27 We begin by considering the particular context at play: probate proceedings. In doing so, we accomplish two things. First, this context assists us in weighing the competing interests advanced in this case. Second, we can properly understand how closed probate proceedings, in general, will be impacted by our holdings in this case.

¶28 Probate proceedings are a series of special proceedings relating to the administration of a decedent's estate, whether testate (i.e., when a valid will exists) or intestate (i.e., when such a document is absent). *See Sanders v. Estate of Sanders*, 2008 WI 63, ¶26, 310 Wis. 2d 175, 750 N.W.2d 806; *see also* WIS. STAT.

chs. 851-879. During an informal administration, which may be used whether the decedent died testate or intestate, the decedent's estate is administered "without exercise of continuous supervision by the court," and the administration largely involves interactions by the appointed personal representative of the estate, with occasional action by the probate registrar.[8] WIS. STAT. § 865.01; *see also* WIS. STAT. § 865.10. Nevertheless, informal administration proceedings are "circuit court proceedings, records of which shall be kept in the same manner as they are kept for formal proceedings." Sec. 865.01. Informal administration is also subject to the provisions in chs. 851 to 879 that are not inconsistent with ch. 865. Sec. 865.01.

¶29 An application for informal administration must provide the information required in WIS. STAT. §§ 879.01 and 856.09, and the application must include statements regarding the decedent's will and whether the decedent died testate or intestate. If the decedent died intestate, then the applicant must aver that he or she "has made diligent inquiry and is unaware of any unrevoked testamentary instrument of the decedent." WIS. STAT. § 865.06(1)-(3). "Upon appointment and qualification [of the personal representative], … the estate shall be administered

---

[8] As the term is used in WIS. STAT. chs. 851 through 879, "'[c]ourt' means the circuit court or judge assigned to exercise probate jurisdiction." WIS. STAT. § 851.04.

Probate registrars are court officials whose functions include "advis[ing], within their competence, in the preparation of any of the documents required to be prepared and filed by the personal representative" under WIS. STAT. ch. 865. WIS. STAT. § 865.065(1)-(2). "Administrative action by the probate registrar is not action by the court." WIS. STAT. § 865.01.

A personal representative is "any person to whom letters to administer a decedent's estate have been granted by the court or by the probate registrar under [WIS. STAT.] ch. 865, but does not include a special administrator." WIS. STAT. § 851.23.

under [WIS. STAT. ch. 865] unless or until superseded or suspended by formal proceedings."[9] WIS. STAT. § 865.08(4).

¶30 The personal representative settles and distributes the decedent's estate and, except as provided by WIS. STAT. ch. 865 or required by interested persons, does so "without adjudication, order or direction of the court." WIS. STAT. § 865.10(1); *see also* WIS. STAT. ch. 857 (providing the powers and duties of personal representatives). At any time, however, the personal representative may invoke the court's authority "to resolve questions concerning the estate or its administration." Sec. 865.10(1). As part of his or her duties, the personal representative must "prepare an inventory of property owned by the decedent at the time of death," WIS. STAT. § 865.11(1), and he or she must do so within six months of appointment, WIS. STAT. § 858.01.

¶31 The personal representative may also pay claims against the decedent's estate, "whether filed as a claim or not," and he or she must do so "on or before the deadline for filing a claim under [WIS. STAT. §] 859.01, or at any time with the consent of the heirs or beneficiaries affected by the payment." WIS. STAT. § 865.13. The probate registrar, by order, sets the deadline for filing claims against the decedent's estate upon receiving the application for informal administration. Sec. 859.01. Such filings must be prompt, as the date set "shall be not less than 3 nor more than 4 months from the date of the order." *Id.* Subject to the exceptions in WIS. STAT. § 859.02(2), claims not filed by the set deadline "are barred against the estate, the personal representative and the heirs and beneficiaries."

---

[9] Formal proceedings are judicial proceedings before the circuit court involving the administration of the decedent's estate. WIS. STAT. § 865.03(1). A demand for formal proceedings suspends informal administration as to the issues referred to in the demand and suspends the personal representative's powers "in respect thereto until the same are reinstated by the court." Sec. 865.03(2).

Sec. 859.02(1); *see also* WIS. STAT. § 859.15 (prohibiting, with exceptions, claims that are "barred by any statute of limitations at the time of the decedent's death").

¶32 Once informal administration is completed, a personal representative may close the estate as provided in WIS. STAT. ch. 863 or WIS. STAT. § 865.16. Sec. 865.16(1). To close an estate as provided in § 865.16, the personal representative must file with the probate registrar a verified statement that the personal representative has: (1) given notice to interested persons and creditors that the deadline for filing a claim has passed; (2) fully administered the decedent's estate and disclosed the arrangements made to pay outstanding claims, expenses, or taxes; (3) provided a copy of the sworn statement to the estate's distributees, creditors, and claimants; and (4) provided a full account of the administration "to the distributees whose interests are affected thereby."[10] Sec. 865.16(1)(a)-(c).

¶33 Once a personal representative closes an estate under WIS. STAT. § 865.16, he or she must timely file receipts from the distributees with the probate registrar in the manner provided in WIS. STAT. § 863.41.[11] WIS. STAT. § 865.21. The personal representative's appointment then terminates "[i]f no proceedings challenging the statement or otherwise involving the personal representative are pending in the court 6 months after the statement is filed." Sec. 865.16(2). In particular, and relevant to this case, WIS. STAT. § 865.18 bars claims by interested persons and creditors against the personal representative for breach of fiduciary duty

---

[10] A "distributee" is "any person to whom property of a decedent is distributed other than in payment of a claim, or who is entitled to property of a decedent under the decedent's will or under the statutes of intestate succession." WIS. STAT. § 851.07.

[11] The personal representative must file receipts with the probate registrar within 120 days after filing the sworn statement closing the estate. *See* WIS. STAT. § 863.41 ("Within 120 days after the final judgment is signed the personal representative shall file with the court receipts from distributees for all personal property assigned in the final judgment, unless the court extends the time."); *see also infra* ¶¶35, 59 n.15.

15

"unless a proceeding to assert the same is commenced within 6 months after the filing of the closing statement," but it does not bar "recovery for fraud, misrepresentation, or inadequate disclosure related to the settlement of the decedent's estate." *Id.*

¶34 Notably, "[*a*]*ll estates* are to be completed as soon as reasonably possible and without unnecessary delay." WIS. STAT. § 863.33 (emphasis added). If an estate is not closed within eighteen months after filing a petition for either formal or informal administration, and there is no order extending the time to complete administration, a personal representative must show cause as to why the estate has not been closed. WIS. STAT. § 863.35(1)-(2).

¶35 Once closed, an estate may be reopened under WIS. STAT. § 879.31, which provides that "[o]n motion, notice to adverse parties and hearing, the court may relieve a party or legal representative from a judgment or orders of the court or the party's stipulation as provided in [WIS. STAT. §] 806.07." *See Gittel v. Abram*, 2002 WI App 113, ¶15, 255 Wis. 2d 767, 649 N.W.2d 661 (noting that § 879.31 adopts the provisions of § 806.07 for probate proceedings). It appears these provisions apply to closed informal probate proceedings. *See* WIS. STAT. § 865.01 (providing that the provisions in WIS. STAT. chs. 851 through 879, that are not inconsistent with ch. 865, apply to informal administration).

¶36 WISCONSIN STAT. § 806.07(1) provides the grounds upon which a circuit court may grant relief to a party from a judgment, order or stipulation. Sec. 806.07(1)(a)-(h). Motions made under this statute "shall be made within a reasonable time, and, if based on [§ 806.07](1)(a) or (c), not more than one year after the judgment was entered or the order or stipulation was made." Sec. 806.07(2).

¶37    Given the foreging context, Wisconsin law is clear that all estate administrations must be "completed as soon as reasonably possible and without unnecessary delay." WIS. STAT. § 863.33. The procedures for informal estate administration in WIS. STAT. ch. 865 and the deadlines in those procedures regarding the inventory, filing and handling of claims, and closure of an estate show that estate administration should be completed in a timely manner. And both formal and informal administrations have dates requiring court action due to inaction by relevant parties. WIS. STAT. § 863.35(1)-(2), WIS. STAT. § 865.16(2) (terminating the personal representative's appointment when no action has been taken by anyone seeking to challenge the personal representative).

¶38    When read together, and with the limited reasons and timing allowed under the law for reopening an estate (as discussed below), these statutes discussed above—as well as corresponding case law—broadly reflect policies favoring efficient estate administration and closure, including finality in estate administration.

## II.  Finality in estate administration

¶39    Generally speaking, when determining whether to reopen a judgment, order or stipulation under WIS. STAT. § 806.07, finality is an important consideration because § 806.07 seeks to "achieve a balance between the competing values of finality and fairness in the resolution of a dispute." *State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 542, 363 N.W.2d 419 (1985). Thus, in determining whether to reopen an estate under WIS. STAT. § 879.31, the policy favoring finality in estate administration becomes an important consideration. And, when considering fairness in the resolution of a dispute—such as the validity of a

restrictive covenant included on a deed for real property sold by an estate—we must be cognizant of the special nature of probate proceedings, as outlined above.

¶40    As noted, an estate may be reopened for the reasons provided in WIS. STAT. § 806.07, which is the general statute in Wisconsin for obtaining relief from judgments, orders or stipulations.  *See* WIS. STAT. § 879.31.  As relevant to this case, those reasons for relief include: "[m]istake, inadvertence, surprise, or excusable neglect"; "[f]raud, misrepresentation, or other misconduct of an adverse party"; "[t]he judgment is void"; and "[a]ny other reasons justifying relief from the operation of the judgment."  Sec. 806.07(1)(a), (c)-(d), (h).

¶41    We now look at how Wisconsin courts have applied the grounds in WIS. STAT. § 806.07 to determine whether to reopen closed estates.  Our supreme court has held that probate proceedings may be reopened due to a mistake of fact, *see Moon v. Cullen*, 205 Wis. 648, 658-59, 238 N.W. 845 (1931), or a void judgment, *see Kalitzky v. Kalitzky's Estate*, 255 Wis. 442, 445-46, 39 N.W.2d 357 (1949).

¶42    In *Moon*, our supreme court allowed the probate court to vacate and revise its original distribution order three years after entering the order.  *Moon*, 205 Wis. at 650, 658-59.  It did so because the administrator withheld the fact that the decedent had a living heir (a daughter), causing the court to conclude that the distribution order was entered on a materially "mistaken notion of the facts."  *Id.* at 656, 658.  In *Kalitzky*, our supreme court allowed the decedent's son to reopen probate proceedings five years after the probate court entered a final order.  *Kalitzky*, 255 Wis. at 444, 446.  The court concluded that the probate court's order was void with respect to the decedent's son for a lack of jurisdiction over him because service on the court-appointed attorney for the decedent's son—who had been appointed

without the son's knowledge or consent—was not "a satisfactory legal substitute for service" on the decedent's son. *Id.* at 445-46.

¶43 Our supreme court has also upheld a probate court's decision denying a petition to reopen proceedings despite allegations of fraud, misrepresentation or misconduct. *See Steuber v. Conway*, 270 Wis. 426, 433-34, 71 N.W.2d 272 (1955). In *Steuber*, the decedent's niece—the will's appointed personal representative— died in an accident less than a month after the estate closed. *Id.* at 429. Thereafter, the decedent's widow sought to reopen the decedent's estate for readministration on the basis that the niece had committed fraud. *Id.* at 430. Our supreme court concluded that the probate court did not erroneously exercise its discretion by refusing to reopen the decedent's estate for readministration because the widow received the advice of counsel in settling a dispute with the niece regarding the estate's administration, the widow was aware of all the material facts surrounding the validity of two deeds conveying real estate to the niece that the widow questioned—including the fact that the niece's name in the deed was typed over a name that had been erased—at the time of the settlement, and the widow had not questioned the settlement until after the niece died. *Id.* at 433-34. The court also noted that the widow was pursuing a separate action for the same relief based on the same facts. *Id.* at 434.

¶44 Turning back to the general principles for relief from a closed case, finality is particularly important when determining whether to grant relief for "[a]ny other reasons justifying relief from operation of the judgment" pursuant to WIS. STAT. § 806.07(1)(h), commonly referred to as "the catch-all" provision. *See M.L.B.*, 122 Wis. 2d at 550; *see also Miller v. Hanover Ins. Co.*, 2010 WI 75, ¶32, 326 Wis. 2d 640, 785 N.W.2d 493 (referring to § 806.07(1)(h) as a "catch-all" provision allowing relief from a judgment); *Sukala v. Heritage Mut. Ins. Co.*, 2005

WI 83, ¶9, 282 Wis. 2d 46, 698 N.W.2d 610 (same). Because of the importance of finality in legal proceedings, our supreme court explained in ***M.L.B.*** that § 806.07(1)(h) "should be used sparingly" and "only when the circumstances are such that the sanctity of the final judgment is outweighed by 'the incessant command of the court's conscience that justice be done in light of *all* the facts.'" ***M.L.B.***, 122 Wis. 2d at 550 (citation omitted). Such circumstances should not be interpreted "so broadly as to erode the concept of finality" nor "so narrowly that [§ 806.07(1)](h) does not provide a means for relief for truly deserving claimants." ***M.L.B.***, 122 Wis. 2d at 552.

¶45 Thus, when determining whether to grant relief under WIS. STAT. § 806.07(1)(h), a circuit court "should consider factors relevant to the competing interests of finality of judgments and relief from unjust judgments." ***M.L.B.***, 122 Wis. 2d at 552. These factors include: (1) "whether the judgment was the result of the conscientious, deliberate and well-informed choice of the claimant"; (2) "whether the claimant received the effective assistance of counsel"; (3) "whether relief is sought from a judgment in which there has been no judicial consideration of the merits and the interest of deciding the particular case on the merits outweighs the finality of judgments"; (4) "whether there is a meritorious defense to the claim"; and (5) "whether there are intervening circumstances making it inequitable to grant relief." *Id.* at 552-53.

¶46 Further contributing to the importance of finality—and of particular importance to the case before us—is the requirement in WIS. STAT. § 806.07(2) that

motions for relief from judgment be made within a reasonable time.[12] Sec. 806.07(2). Whether a motion under § 806.07(1)(h) was made within a reasonable time requires "a thorough review of all relevant facts." *State ex rel. Cynthia M.S. v. Michael F.C.*, 181 Wis. 2d 618, 627, 630, 511 N.W.2d 868 (1994). Factors relevant to the reasonableness determination will vary from case to case, but they will undoubtedly include "the reasons for the moving party's delay" and the prejudice to the party opposing the motion. *Id.* at 627. Relevant factors may also include the same factors considered when determining whether to grant relief under § 806.07(1)(h). *See Cynthia M.S.*, 181 Wis. 2d at 627-28.

¶47     Nevertheless, and as potentially relevant to the circumstances in this case, WIS. STAT. § 806.07 "does not limit the power of a court to entertain an independent action to relieve a party from judgment, order, or proceeding, or to set aside a judgment for fraud on the court." Sec. 806.07(2). "[A]lthough not regarded with favor by the courts," this provision allows a party to bring an independent equitable action for relief where the "only time limitation is the equitable doctrine of laches." *Walker v. Tobin*, 209 Wis. 2d 72, 77, 79-80, 568 N.W.2d 303 (Ct. App. 1997) (citation omitted).

¶48     We thus also find cause to look to the equitable doctrine of laches in determining whether a long-closed estate can be reopened, given that, as noted earlier, probate proceedings are treated as a series of special proceedings prompted, of course, by someone's death. *See Sanders*, 310 Wis. 2d 175, ¶26. In a sense, probate is both equitable and legal in nature. *See Richardson v. Richardson*,

---

[12] A party may not circumvent the one-year time limit applicable to WIS. STAT. § 806.07(1)(a) and (c) by recharacterizing its claim as one brought pursuant to § 806.07(1)(h). *State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 552, 363 N.W.2d 419 (1985). However, the reasonable time requirement does not apply to a § 806.07(1)(d) motion for relief from a void judgment. *Neylan v. Vorwald*, 124 Wis. 2d 85, 100, 368 N.W.2d 648 (1985).

223 Wis. 447, 459, 271 N.W. 56 (1937) (noting that probate courts have the authority "to recognize and apply equitable rules and principles in so far as they are applicable to matters relating to the settlement of estates of decedents"); *see also State ex rel. Peterson v. Circuit Ct. of La Crosse Cnty.*, 177 Wis. 548, 553, 188 N.W. 645 (1922) (probate courts have "full jurisdiction in law as well as in equity in respect to all matters involved in the settlement of the estates of deceased persons").

¶49 Laches considers whether a party has brought an equitable claim within a reasonable time. *See Wisconsin Small Bus. United, Inc. v. Brennan*, 2020 WI 69, ¶11, 393 Wis. 2d 308, 946 N.W.2d 101. At the outset, we question whether we could simply apply the doctrine of laches so as to deny the timeliness of Townline's attempt to reopen the Estate in this case. We believe that would be improper. As we have already noted, the probate code expressly incorporates WIS. STAT. § 806.07 as the applicable standard for deciding whether to reopen an estate. In other words, there are existing statutory provisions that courts are instructed to apply. Relatedly, laches is typically used in lieu of legislatively established statutes of limitations or repose for claims where a codified limitations period does not exist. *See Walker*, 209 Wis. 2d at 80. Accordingly, while we look at the doctrine's principles to inform our analysis, we are doubtful that laches applies, in and of itself, to Townline's motion to reopen.

¶50 The doctrine of laches bars relief "when a claimant's failure to promptly bring a claim causes prejudice to the party having to defend against that claim." *Wisconsin Small Bus.*, 393 Wis. 2d 308, ¶11. It is based on the "notion that equity aids the vigilant, and not those who sleep on their rights to the detriment of the opposing party." *State ex rel. Wren v. Richardson*, 2019 WI 110, ¶14, 389 Wis. 2d 516, 936 N.W.2d 587 (citation omitted). The party raising laches must

prove three elements: "(1) a party unreasonably delays in bringing a claim; (2) a second party lacks knowledge that the first party would raise that claim; and (3) the second party is prejudiced by the delay." **Wisconsin Small Bus.**, 393 Wis. 2d 308, ¶12. Even if the party proves all three elements, "application of laches is left to the sound discretion of the court asked to apply this equitable bar." **Id.**

¶51    Whether a party's delay in bringing a claim is reasonable varies "and depends on the facts of a particular case." **Id.**, ¶14. An unreasonable delay is not based on what a party knows, but what it "might have known with the exercise of reasonable diligence." **Wren**, 389 Wis. 2d 516, ¶20. "Where the question of laches is in issue, the plaintiff is chargeable with such knowledge as he [or she] might have obtained upon inquiry, provided the facts already known by him [or her] were such as to put a [person] of ordinary prudence upon inquiry." **Id.** (citation omitted).

¶52    Prejudice resulting from the delay also depends on the facts and circumstances of a particular case, but it is "generally held to be anything that places the party in a less favorable position." **Id.**, ¶32 (citation omitted). Prejudice may be economic or evidentiary.[13] **Id.**, ¶33. Relevant here, evidentiary prejudice arises when the plaintiff's "delay in bringing an action has curtailed the defendant's ability to present a full and fair defense on the merits due to the loss of evidence, the death of a witness, or the unreliability of memories." **Id.**, ¶33 (citation omitted). The death of a key witness "is precisely the kind of thing laches is aimed at, particularly where 'the decedent's knowledge is crucial to a party's defense.'" **Id.**, ¶34 (citation omitted). Additionally, important documents "may have been misplaced or destroyed." **Id.** (citation omitted). Witness unavailability, however, may not always

---

[13] Economic prejudice arises when the "costs to the defendant have significantly increased due to the delay." **State ex rel. Wren v. Richardson**, 2019 WI 110, ¶33 n.26, 389 Wis. 2d 516, 936 N.W.2d 587 (citation omitted).

be enough to satisfy the prejudice element, "for example, where the witness's potential testimony is of marginal importance." *Zizzo v. Lakeside Steel & Mfg. Co.*, 2008 WI App 69, ¶21, 312 Wis. 2d 463, 752 N.W.2d 889.

### III. Townline's challenge to the Restriction's validity by reopening the Estate is barred as a matter of law.

¶53     We have engaged in the preceding survey of Wisconsin law to inform us of the factors that are relevant to deciding whether to grant a party's request to reopen an estate that has been closed for a lengthy period of time.  Based on our consideration of these principles, we look to the amount of time that has passed since an estate has closed, the party's interaction with the closed estate paired with the relief sought by challenging the estate's administration, whether alternative and more appropriate methods were available to obtain that relief, and other intervening circumstances that would make it inequitable to reopen the estate for the relief sought.

¶54     As an initial and important matter, we recognize that many of the matters outlined above involve a circuit court's exercise of discretion.  *See Cynthia M.S.*, 181 Wis. 2d at 624 (reviewing the circuit court's decision granting relief under WIS. STAT. § 806.07 for an erroneous exercise of discretion); *Wren*, 389 Wis. 2d 516, ¶16 (reviewing de novo whether the party asserting laches proved all three elements, but reviewing the circuit court's decision to apply laches for an erroneous exercise of discretion).  We also recognize that the transcript with the circuit court's reasoning for reopening the Estate in this case is missing from the record, and we thus assume that the transcript supports every fact essential to sustain the court's exercise of discretion.  *See Austin v. Ford Motor Co.*, 86 Wis. 2d 628, 641, 273 N.W.2d 233 (1979) ("[T]he court will assume, in the absence of a transcript, that

24

every fact essential to sustain the [circuit court]'s exercise of discretion is supported by the record.").

¶55    Despite these matters regarding our appellate review, we decide the issue of whether to reopen the Estate as a matter of law, based on the particular facts presented, the policy arguments presented by the parties, and, as we conclude below, the public policy favoring eventual finality in estate administration.[14]  We believe that the question of the overall validity of Townline's motion to reopen the Estate many years after its closure is fundamentally a matter of judicial policy that should be resolved as a matter of law, given the particular circumstances of this case.  In this sense, we conclude that the circuit court erroneously exercised its discretion by reopening the Estate, regardless of any reasoning it provided during the hearing.  In most cases seeking to reopen a closed estate, however, the issue is, and should be, left to the circuit court's discretion.

---

[14] Wisconsin courts have used public policy to bar otherwise potentially valid claims in other instances, most notably in the context of negligence cases.  *See* ***Hoida, Inc. v. M&I Midstate Bank***, 2006 WI 69, ¶¶1-2, 43, 291 Wis. 2d 283, 717 N.W.2d 17 (barring a subcontractor's negligence claim against a disbursing agent on the public policy ground that allowing recovery would place an unreasonable burden on the disbursing agent); ***Fandrey ex rel. Connell v. American Fam. Mut. Ins. Co.***, 2004 WI 62, ¶1, 272 Wis. 2d 46, 680 N.W.2d 345 (concluding that a court may bar liability under WIS. STAT. § 174.02 (the dog bite statute) based on public policy factors); ***Hornback v. Archdiocese of Milwaukee***, 2008 WI 98, ¶6, 313 Wis. 2d 294, 752 N.W.2d 862 ("[E]ven if a viable negligence claim had been made, recovery would nonetheless be precluded on the public policy ground that allowing recovery would send this court down a slippery slope with no sensible or just stopping point.").

Wisconsin courts have also barred the enforcement of contracts when those contracts violated public policy.  *See* ***Atkins v. Swimwest Fam. Fitness Ctr.***, 2005 WI 4, ¶30, 277 Wis. 2d 303, 691 N.W.2d 334 (barring the enforcement of an exculpatory waiver as contrary to public policy); ***Heyde Cos., Inc. v. Dove Healthcare, LLC***, 2002 WI 131, ¶26, 258 Wis. 2d 28, 654 N.W.2d 830 (concluding that a no-hire provision restricting employment opportunities of employees without their knowledge and consent violated not only WIS. STAT. § 103.465 but also public policy); *see also* ***Rosecky v. Schissel***, 2013 WI 66, ¶68, 349 Wis. 2d 84, 833 N.W.2d 634 ("A court may declare a contract void on public policy grounds only if it determines, after weighing the interests, that the interests in enforcing the contract are clearly outweighed by the interests in upholding the policy that the contract violates.").

¶56 The above-referenced legal principles weigh against allowing Townline to now reopen the Estate to challenge its administration with respect to the Restriction. The very lengthy amount of time that had passed since the Estate closed; Townline's lack of any connection to the Estate's administration and its reasons for reopening the Estate; the alternative, and more appropriate, method available to Townline for invalidating the Restriction; and several intervening circumstances, including Bachhuber's death and Townline's knowledge of the Restriction at the relevant times, are all factors that do not favor disturbing the finality of the Estate.

¶57 As an initial and prominent consideration, the Estate had been closed for more than fifteen years by the time Townline filed its motion to reopen. The Estate was opened in 2002, the Property was sold and conveyed with the Restriction in place that year, and the Estate was fully administered and closed in 2005. Thereafter, the Property continued to be sold and conveyed with the Restriction in place—and without challenges to the Restriction or to the Estate's administration— through Townline's purchase of the Property in 2019. It was not until 2020 that Townline sought to reopen the Estate to challenge the manner in which the Estate placed the Restriction on the Property.

¶58 We note that Townline's claim regarding Arnold and Bachhuber's handling of the Will sounds in fraud, insomuch as its primary argument is that the personal representatives had no authority to place the Restriction on the deed to the Property, and they failed to alert anyone regarding the Will that was located before the Estate was closed. A motion to reopen the Estate on that basis, however, must be made "not more than one year after the judgment was entered or the order or stipulation was made." *See* WIS. STAT. § 806.07(1)(c), (2). Here, such a timely

26

motion did not occur; rather, Townline brought its motion to reopen the Estate fifteen years after the Estate closed.

¶59 Furthermore, Wisconsin law is clear that Townline cannot circumvent the one-year time limit in WIS. STAT. § 806.07(2) for its largely fraud-based claim by recharacterizing its allegations regarding the Will as "extraordinary circumstances" justifying relief under § 806.07(1)(h). *See M.L.B.*, 122 Wis. 2d at 552.[15] Townline argues that its motion to reopen the Estate was timely because the motion was brought approximately one year after it purchased the Property. But this argument only accounts for the time that passed since Townline acquired the Property; it does not consider the amount of time that has passed *since the Estate*

---

[15] Townline's claim in the circuit court that the Restriction was void ab initio arguably falls under WIS. STAT. § 806.07(1)(d), which is not subject to the reasonable time requirement. *See Neylan*, 124 Wis. 2d at 100. Townline, however, made no argument that its motion to reopen was timely on the basis that it was *not* subject to the reasonable time requirement. To the extent Townline means to argue that a fraud on the probate registrar is an independent equitable action pursuant to § 806.07(2), we note that the time limit to bring such an action is determined by laches. *See Walker v. Tobin*, 209 Wis. 2d 72, 79-80, 568 N.W.2d 303 (Ct. App. 1997); *see also supra* ¶¶47-49.

We also reject the notion advanced by Townline that WIS. STAT. §§ 879.31 and 806.07 do not apply to informally administered estates. As we have noted, the provisions of WIS. STAT. chs. 851 through 879, that do not conflict with WIS. STAT. ch. 865, apply to informal administration. WIS. STAT. § 865.01; *see supra* ¶¶28, 35. And, § 865.01 specifically states that informal administration proceedings are "circuit court proceedings" with formal court records. Furthermore, all probate proceedings, including informal administration, are "a series of special proceedings, which are terminated with a series of orders that are final orders." *Sanders v. Estate of Sanders*, 2008 WI 63, ¶26, 310 Wis. 2d 175, 750 N.W.2d 806. A final order in a special proceeding "determines and disposes finally of the proceeding—one which, so long as it stands, precludes any further steps therein. It bears the same relation to the proceeding in which it is entered as the final judgment bears to an action." *Id.*, ¶27 (citation omitted). The personal representative's sworn statement closing an informally administered estate similarly determines and disposes of the informal administration, given that the sworn statement confirms that the decedent's estate has been fully administered, that those interested in the estate's administration have received a full account of the administration, and that parties have been informed that the deadline for filing claims has passed. *See* WIS. STAT. § 865.16(1)(a)-(c).

*was closed.* In this case, too much time has passed since the Estate's closing, and that amount of time weighs strongly against disturbing the finality of the Estate.

¶60    Next, as only a recent purchaser of the Property, Townline's lack of interaction with the Estate while it was open and its limited purpose for reopening the Estate do not favor disturbing the Estate's finality. Townline sought to reopen the Estate for the purpose of invalidating the Restriction, yet Townline had an alternative method for doing so without needing to directly disturb the finality of the Estate's administration. At oral argument, Townline acknowledged that it could have "brought a quiet title action" to remove the Restriction.[16] It argued, however, that based on the personal representatives' actions, the most appropriate way to remove the Restriction was to reopen the Estate and challenge the personal representatives' authority to place the Restriction. Townline further added that it did so to maintain the sanctity of informal probate proceedings.

¶61    Given Townline's lack of interaction with the Estate, its limited purpose for reopening the Estate is not compelling in this particular context of reopening a long-closed estate, especially when Townline had a commonly understood alternative method to remove the Restriction that would not have required reopening the Estate and disturbing its finality. In such an action, Townline could have made the same arguments it does now on the merits of the Restriction's

---

[16] WISCONSIN STAT. § 841.01(1) provides that "[a]ny person claiming an interest in real property may maintain an action against any person claiming a conflicting interest, and may demand a declaration of interests." An "interest in real property" includes "estates in, powers of appointment under [WIS. STAT.] ch. 702 over, present and future rights to, title to, and interests in real property, including … rights under covenants running with the land." WIS. STAT. § 840.01(1). "Persons claiming interests adverse to the plaintiff which interests the plaintiff wants affected by the judgment shall be named as defendants; other persons with interests in the described property may be named as defendants." WIS. STAT. § 841.03. "Actions for a declaration of interests were formerly known as quiet title actions." *Village of Hobart v. Oneida Tribe of Indians of Wis.*, 2007 WI App 180, ¶12, 303 Wis. 2d 761, 736 N.W.2d 896.

legality. Although Townline's basis for removing the Restriction—i.e., that the personal representatives had no authority to include the Restriction in a deed for the Property subject to administration—is tied to the Estate's administration, Townline itself is not. In this context, Townline's most appropriate avenue for seeking relief would have been an action under WIS. STAT. § 840.01(1), not reopening a long-closed estate.

¶62    Finally, intervening circumstances also make it inequitable to allow Townline to reopen the Estate for the specific relief it seeks. First, Bachhuber, who was a co-personal representative and directly handled the Estate's administration, is deceased. He was one of, if not the key person involved with matters related to Townline's challenge. Also, and relatedly, because of the passage of time and normal file-retention policies, some documents from Bachhuber's administration of the Estate no longer exist. Given his integral involvement in the Estate's administration, Bachhuber's unavailability and his incomplete file would place the Estate at a disadvantage in defending a claim challenging its administration.[17] Woodrich, whom Bachhuber consulted for the Property's appraisal value provided in the Estate's inventory during the administration, is also deceased.[18] Given Townline's arguments in this case regarding the failure of the Estate's personal

---

[17] The Heirs' counsel informed the circuit court at the July 2022 evidentiary hearing that he did not have Bachhuber's entire file regarding the Estate's administration. We, of course, recognize that this evidentiary void will impact any quiet title action. It will do so, however, strictly as an evidentiary matter within the context of that claim, which would seek to declare a restrictive covenant on real property void. It will not be used to directly assail an estate's proper administration and formally reopen that estate.

[18] *See* WIS. STAT. § 865.12 (allowing the personal representative to "employ a qualified and disinterested appraiser to assist in ascertaining values of any assets where valuation is subject to reasonable doubt").

representatives to maximize the value of the Property upon its sale, his absence is also material.

¶63    Second, the Estate had no reason to believe that a *subsequent* purchaser of the Property would seek to reopen the Estate to remove the Restriction, given that the Property was sold to Billgee with the Restriction in place. In fact, the Restriction was part of the negotiations for the sale of the Property. Subsequent owners of the Property (WM Development and ABS 1) also purchased the Property with knowledge of the Restriction. None of these prior owners challenged the administration of the Estate with respect to the Restriction. Even Townline purchased the Property with knowledge of the Restriction (despite its belief that the Restriction was invalid), which fact we find compelling to our analysis and conclusion.

¶64    In short, the deaths of Bachhuber and Woodrich, the loss of documents regarding Bachhuber's handling of the Estate, and the Estate's lack of a reason to believe that a subsequent purchaser would challenge the Estate's administration are circumstances that make it inequitable to allow Townline to now reopen the Estate for the relief it seeks. Taken together with the factors we have already considered, these circumstances weigh against disturbing the finality of the Estate's administration.

¶65    Before concluding, we acknowledge the factors militating in favor of allowing the reopening of the Estate. First, the fact that a will existed and was discovered before the Estate closed, yet neither Bachhuber nor Arnold alerted the probate registrar or any other party of its discovery, provided a basis for Townline and the circuit court to consider upsetting any finality resulting from that failure to disclose. However, as noted above, a motion to reopen a closed proceeding at this

late date for any fraud is time-barred. Second, as alluded to earlier in this opinion, it is by no means clear that Townline's challenge to the Restriction's invalidity is without merit, and Wisconsin law plainly desires that personal representatives of estates comply with state law. Further, Wisconsin public policy "favors the free and unrestricted use of property." *Forshee v. Neuschwander*, 2018 WI 62, ¶16, 381 Wis. 2d 757, 914 N.W.2d 643 (citation omitted). In cases without the facts that exist here, the public policy favoring finality may very well yield to these factors and compel allowing an estate to be reopened.

¶66 In sum, public policy calls for eventual finality in estate administration; the ability to challenge an estate must eventually come to an end. Under the facts of this particular case, the policies favoring finality in estate administration and having a sensible and just stopping point for challenging closed estates outweigh, as a matter of law, allowing Townline to challenge the administration of the Estate. Allowing such a challenge for the purpose of removing the Restriction after the Estate has been closed for fifteen years would unreasonably undermine the finality of the Estate. A stopping point to such challenges is especially necessary where, as here, the challenging party had no interaction with the long-closed estate, there is an alternative and more appropriate method for the legal relief sought without reopening that estate, and intervening circumstances make it inequitable for the challenging party to reopen that estate and challenge its administration.

*By the Court.*—Order reversed.

Recommended for publication in the official reports.