PATIENCE DRAKE ROGGENSACK, C.J.
*760 ¶ 1 Lee and Mary Jo Neuschwander purchased property on Hayward Lake in Hayward, Wisconsin. They renovated the large house and began renting it to vacationers on both short-term and long-term bases. Several neighboring property owners (the "Neighbors") objected to the use of the property as a vacation rental. They brought suit in Sawyer County Circuit *645 Court, claiming that a restrictive covenant that encumbers all lots in the subdivision of which Neuschwanders' property is a part, precludes short-term rentals of property.[1]
¶ 2 The Sawyer County Circuit Court held in favor of the Neighbors and enjoined Neuschwanders from further short-term rentals, except for the Birkebeiner weekend.[2] The court of appeals reversed. Forshee v. Neuschwander, 2017 WI App 43, 377 Wis. 2d 162, 900 N.W.2d 100. The Neighbors petitioned for review, which we granted.
*761 ¶ 3 We review a single issue: Whether the short-term rental of the Neuschwanders' property constitutes "commercial activity" under the restrictive covenant that encumbers their property. We conclude that the term, "commercial activity," which is undefined in the covenant, is ambiguous. Therefore, we narrowly interpret it and conclude that it does not preclude either short-term or long-term rentals of Neuschwanders' property. Accordingly, we affirm the decision of the court of appeals.
I. BACKGROUND
¶ 4 The Neuschwanders' property was purchased by the Louisiana Pacific Corporation in 1984 and 1985. It consists of two lots of a 15-lot subdivision that was originally owned by four individuals. All lots in the subdivision have been encumbered by a restrictive covenant that provides:
1. No dwelling can be erected on said property with a living space of less than 1,000 square feet.
2. There shall be no subdivision of existing lots.
3. There shall be no commercial activity allowed on any of said lots.
¶ 5 Louisiana Pacific built the first house in the subdivision. It is a large building that Louisiana Pacific used to provide short stays to clients, vendors, politicians and employees. The house was used for everything from single-night events to month-long stays, as well as serving as a corporate social center.
¶ 6 In 2014, the Neuschwanders bought the property and expended a substantial amount of money renovating the large house. While the Neuschwanders *762 used the property themselves on occasion, the primary use has been the rental of the property to vacationers on both short-term and long-term bases through the website VRBO (Vacation Rental By Owner).[3]
¶ 7 Neuschwanders' property consists of two lots equaling 2.2 acres and a large house. It is located on a peninsula in Lake Hayward in the City of Hayward, Wisconsin. It is accessible via a narrow, private road that Louisiana Pacific built. There are a number of other residents in the subdivision, several of whom filed this action. Each of their homes was built after Louisiana Pacific's construction of the now-Neuschwander house.
¶ 8 The Neuschwanders' house is large, about 4,000 square feet, and able to sleep up to 15 people. When renting the property, the occupants treat the house in the same way that an owner would: They sleep, cook, eat, and recreate in their preferred manner. During the course of renters' stays the Neuschwanders do not provide any services to renters. For example, *646 there is no maid or room service of any type.
¶ 9 The Neighbors' complaint alleged that the restrictive covenant that proscribes "commercial activity" was violated by short-term rentals of the property. They sought injunctive relief to prevent the Neuschwanders from "further violating the restrictions placed upon [their property]." Upon the parties' competing motions for summary judgment, the circuit court agreed with the Neighbors and concluded that short-term rentals of the Neuschwanders' property violated the restrictive covenant.
¶ 10 The circuit court explained that the unstated "purpose of the restrictive covenant was to *763 ensure and maintain a quiet neighborhood where people would know their neighbors," and that the Neuschwanders' short-term rentals violated that purpose. The circuit court enjoined the Neuschwanders from using their property for short-term rentals except for the Birkebeiner weekend.[4] The Neuschwanders appealed.
¶ 11 On appeal, the Neuschwanders alleged that the restrictive covenant is ambiguous and that the circuit court improperly considered extrinsic evidence in coming to its conclusion. In a published opinion,[5] the court of appeals agreed with the Neuschwanders, concluding that the restrictive covenant is ambiguous and that it did not bar short-term rentals. Accordingly, the court of appeals reversed the circuit court's summary judgment and lifted the injunction on the Neuschwanders' use of their property.
¶ 12 The Neighbors sought review of the court of appeals' decision, which we granted. For the reasons explained hereafter, we affirm the court of appeals.
II. DISCUSSION
A. Standard of Review
¶ 13 We independently review a grant or denial of summary judgment by applying the same standards used in the circuit court and the court of appeals, while benefitting from the discussions of both courts.
*764 Sands v. Menard, 2017 WI 110, ¶ 28, 379 Wis. 2d 1, 904 N.W.2d 789 ; Dufour v. Progressive Classic Ins. Co., 2016 WI 59, ¶ 12, 370 Wis. 2d 313, 881 N.W.2d 678. Summary judgment is appropriate where there is no genuine issue of material fact and the movant has established the right to judgment as a matter of law. Wis. Stat. § 802.08(2) (2015-16);[6] Sands, 379 Wis. 2d 1, ¶ 28, 904 N.W.2d 789.
¶ 14 Interpretation of a restrictive covenant is a question of law that we review independently of prior court decisions. Zinda v. Krause, 191 Wis. 2d 154, 165, 528 N.W.2d 55 (Ct. App. 1995). Whether the language employed in a restrictive covenant is ambiguous is also a question of law that we independently decide. Id.
B. Restrictive Covenants
1. General principles
¶ 15 Covenants come in various forms, and are characterized by the nature of the burden or benefit imposed. Restatement (Third) of Property: Servitudes § 1.3(3)
*647 cmt. e. (Am. Law Inst. 2000). A covenant becomes a servitude on the land if either its burden or its benefit runs with the land. Id. cmt. a. "A restrictive covenant is a negative covenant that limits permissible uses of land." Id. § 1.3(3).
¶ 16 Public policy of the State of Wisconsin "favors the free and unrestricted use of property." Crowley v. Knapp, 94 Wis. 2d 421, 434, 288 N.W.2d 815 (1980).
*765 "Accordingly, restrictions contained in deeds and in zoning ordinances must be strictly construed to favor unencumbered and free use of property." Id. (citing McKinnon v. Benedict, 38 Wis. 2d 607, 619, 157 N.W.2d 665 (1968) (further citations omitted) ). Consequently, in order to be enforceable, deed restrictions that limit the free use of property "must be expressed in clear, unambiguous, and peremptory terms." Id. at 435, 288 N.W.2d 815.
¶ 17 In resolving contests about the meaning of a restrictive covenant in a deed, we do not look for amorphous general intent, but rather, we determine the meaning of the restriction by the words actually used. Id. at 438, 288 N.W.2d 815. Construction of a covenant is necessary when the covenant is ambiguous. Id. at 434, 288 N.W.2d 815 (citing Bollenbeck v. Vill. of Shorewood Hills, 237 Wis. 501, 297 N.W. 568 (1941) ); see also Peterson v. Gales, 191 Wis. 137, 139-40, 210 N.W. 407 (1926) (construing "house" as an ambiguous term such that the restrictive covenant did not prohibit the use of the property as a machine shop). If the words employed in the restrictive covenant are ambiguous, we resolve disputes about the meaning of the restriction in favor of the free use of the property. Crowley, 94 Wis. 2d at 438 n.3, 288 N.W.2d 815 (citing Schneider v. Eckhoff, 188 Wis. 550, 556, 206 N.W. 838 (1926) (providing that because "the language used in the restriction is doubtful in meaning ... all doubt, under the general rule, should be resolved in favor of the free use [of land]") ).
¶ 18 On the other hand, if the meaning of a restrictive covenant clearly can be ascertained from the words of the covenant itself, its restrictions will be enforced. See Zinda, 191 Wis. 2d at 166, 528 N.W.2d 55 ; see also *766 Voyager Vill. Prop. Owners Ass'n v. Johnson, 97 Wis. 2d 747, 749, 295 N.W.2d 14 (Ct. App. 1980) (concluding that "camping equipment" clearly included camping trailers).
2. The restrictive covenant
¶ 19 Currently, individuals who rent and occupy the Neuschwanders' residence on both short-term and long-term bases use the property in a manner similar to how an owner uses his or her own house. They buy their own food, cook their own meals, make their own beds and recreate as the house's location provides, just as a property owner would.
¶ 20 As we consider those uses, we review a restrictive covenant that declares that "[t]here shall be no commercial activity allowed on any of said lots." The key term in the covenant, as focused on by the parties in their briefs and at oral argument, is "commercial activity." Therefore, we examine whether this term precludes short-term rentals of Neuschwanders' property.
¶ 21 We consider the term, "commercial activity," not in isolation, but in the context of the deed's restrictions as a whole. Zinda, 191 Wis. 2d at 166, 528 N.W.2d 55. However, reviewing "commercial activity" in the context of the two other provisions of the restrictive covenant at issue here does not add clarity to the term we must interpret. We can see that the covenanters clearly required dwellings to have a minimum size and that lots could not be subdivided. However, those two provisions provide *648 no guidance as to what was meant by the "commercial activity" that the covenant precludes. "Commercial activity" is simply an undefined term, whether read separately or in the context of the complete covenant. *767 ¶ 22 It could be that the drafters were attempting to prevent a lot from being used as a lakefront restaurant or a filling station for boats. On the other hand, perhaps a homeowner could maintain a daycare for preschool children in his or her home without running afoul of the commercial activity proscription. Because we are unable to clearly discern the restrictive covenant's meaning through the text of covenant itself, we conclude that it is ambiguous. Id. at 165-66, 528 N.W.2d 55 ("The language in a restrictive covenant is ambiguous if it is susceptible to more than one reasonable interpretation.").
¶ 23 When we determine the ordinary meaning of undefined words, a dictionary often is helpful to our construction. Xcel Energy Servs. v. LIRC, 2013 WI 64, ¶ 30, 349 Wis. 2d 234, 833 N.W.2d 665 (quoting Cty. of Dane v. LIRC, 2009 WI 9, ¶ 23, 315 Wis. 2d 293, 759 N.W.2d 571 ). We do so here as we construe "commercial activity" with the aid of its dictionary definition.
¶ 24 Webster's Dictionary defines "commercial" as "engaged in work designed for the market," "of or relating to commerce," or "characteristic of commerce." Commercial, Webster's New Collegiate Dictionary 226 (1974 ed.). "Commerce," then, refers to "the exchange or buying and selling of commodities on a large scale involving transportation from place to place." Commerce, id.
¶ 25 These dictionary definitions posit that "commercial activity" includes some form of buying and selling. However, the dictionary definition is very nonspecific. One could read these definitions to mean that "commercial activity" is limited to products bought or sold and subsequently moved to another location, thereby excluding purchases and sales that result in consumption or use of the purchased item or *768 service in a single place. However, what we take away from our review of dictionary definitions is that in the context of the entirety of the restrictive covenant on the Neuschwanders' property, we cannot clearly decipher the meaning of "commercial activity."
¶ 26 Case law requires that in order to be enforceable, deed restrictions "must be expressed in clear, unambiguous, and peremptory terms." Crowley, 94 Wis. 2d at 435, 288 N.W.2d 815. However, we are unable to determine precisely what the words in this covenant preclude. Stated otherwise, the covenant presents no "clear, unambiguous, and peremptory terms" to follow. Id. Accordingly, because this restrictive covenant is ambiguous, we must resolve the contest before us in favor of the property owners' ability to use their property freely. Id. at 438 n.3, 288 N.W.2d 815.
¶ 27 Furthermore, support for interpreting "commercial activity" narrowly as not precluding use of the property for short-term rentals is provided by the way in which the first homeowner in the subdivision, Louisiana Pacific, interpreted "commercial activity" as it used the same property. The record establishes that since Louisiana Pacific's construction of the house in the mid-1980s and throughout its ownership, the house was used by individuals who were not the owners,[7] for both *649 short-term and long-term stays. Under Louisiana Pacific's ownership, guests would arrive at the house and leave anywhere from hours later to a full month later. Therefore, because of Louisiana Pacific's corporate status and because of its *769 use of the house, Louisiana Pacific's ownership did not further the purpose of "ensuring a quiet neighborhood where people would know their neighbors," which the circuit court concluded the restrictive covenant was enacted to provide. And finally, if the encumbrance actually were placed on the property to proscribe short-term stays, as the original owner of the property who would have been well-aware of the restrictive covenant, Louisiana Pacific would not have built and maintained the house as it did.
¶ 28 Because we cannot specify the precise activities included in the definition of "commercial activity," we interpret the covenant narrowly and conclude that short-term rentals are not prohibited. Therefore, the Neuschwanders are not precluded from renting their property for short or long periods of time. Accordingly, we affirm the court of appeals' decision voiding the injunction issued by the circuit court.
III. CONCLUSION
¶ 29 Upon our review, we consider a single issue: Whether the short-term rental of the Neuschwanders' property constitutes "commercial activity" under the restrictive covenant that encumbers their property. We conclude that the term, "commercial activity," which is undefined in the covenant, is ambiguous. Therefore, we narrowly interpret it and conclude that it does not preclude either short-term or long-term rentals of Neuschwanders' property. Accordingly, we affirm the decision of the court of appeals.
By the Court. -The decision of the court of appeals is affirmed.

No objection was made to long-term rentals of the Neuschwanders' property. Although what would be characterized as long-term rentals is not apparent from the record before us.

The Honorable John M. Yackel of Sawyer County presided.

Vacation Rental By Owner, https://www.vrbo.com.

The circuit court did not explain why the Birkebeiner weekend was excluded from what it held was proscribed by the restrictive covenant.

Forshee v. Neuschwander, 2017 WI App 43, 377 Wis. 2d 162, 900 N.W.2d 100.

All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

It is worth reiterating that Louisiana Pacific is a corporation whose business operations includes buying products from suppliers and selling products to vendors and consumers, and that both suppliers and vendors were entertained at the property during Louisiana Pacific's ownership.