COURT OF APPEALS
DECISION
DATED AND FILED

April 2, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP206**

STATE OF WISCONSIN

Cir. Ct. No. 2024CV315

IN COURT OF APPEALS
DISTRICT IV

HOLLFELDER LIVING TRUST DATED DECEMBER 6, 2012,
DANNY R. STORMER, LISA M. STORMER,
MICHAEL R. HOLLFELDER AND TERA A. HOLLFELDER,

PLAINTIFFS-APPELLANTS,

V.

AMERICAN TRANSMISSION COMPANY LLC,
ATC MANAGEMENT INC. AND
DAIRYLAND POWER COOPERATIVE,

DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for Dane County: STEPHEN E. EHLKE, Judge. *Affirmed*.

Before Graham, P.J., Blanchard, and Kloppenburg, JJ.

¶1      KLOPPENBURG, J. The Hollfelder Living Trust dated December 6, 2012, Danny Stormer, Lisa Stormer, Michael Hollfelder, and Tera Hollfelder (collectively, "the siblings") appeal the circuit court's dismissal, on summary judgment, of their inverse condemnation action against American Transmission Company LLC, ATC Management Inc., and Dairyland Power Cooperative (collectively, "ATC"). ATC constructed a high voltage transmission line over an easement that ATC acquired ("the transmission line easement") on property that is adjacent to parcels owned by the siblings. The property adjacent to the siblings' parcels is owned, via a trust, by the siblings' parents. The parents and the siblings recorded a document regarding the parents' property and the siblings' parcels. The siblings argue that this document either conveys to them an appurtenant easement or creates a restrictive covenant that they can enforce. As a result, they argue, they have a compensable property interest in the "air, light, and view over and across" the transmission line easement on their parents' property.[1] The siblings further argue that ATC unconstitutionally took that interest without exercising its condemnation authority and, accordingly, that the siblings are entitled to just compensation for that taking.

¶2      We conclude that the document on which the siblings rely does not convey an easement, but it does create a restrictive covenant, as those terms are defined under the case law. However, we also conclude that the siblings fail to show that the restrictive covenant establishes a compensable property interest, and

---

[1] We generally use "compensable property interest" to refer to a property interest that is constitutionally protected such that it cannot be taken for public use without compensation. *See* U.S. CONST. amend. V ("[N]or shall private property be taken for public use, without just compensation."); WIS. CONST. art. I, § 13 ("The property of no person shall be taken for public use without just compensation therefor.").

therefore we need not address whether the property interest was taken by ATC. This is because the siblings fail to cite legal authority showing that the restrictive covenant establishes a compensable property interest of the siblings in the air, light, and view on their parents' property—including the portion over which the transmission line easement is located—that is based on a right recognized under takings jurisprudence. *See **Adams Outdoor Advert. Ltd. P'ship v. City of Madison***, 2018 WI 70, ¶¶21-23, 382 Wis. 2d 377, 914 N.W.2d 660 (To determine whether a party has established an unconstitutional taking claim, the court must identify "the precise property interest at issue" and determine whether that property interest is "based on a right recognized under … takings jurisprudence."). Accordingly, we affirm.

## BACKGROUND

¶3      This appeal concerns property in Cross Plains, Wisconsin, which has been in the Hollfelder family for several generations. In 1979, Roger and Laura Hollfelder acquired the property, which then totaled approximately 120 acres, from Roger's parents.

¶4      In the 1990s, Roger and Laura gifted parcels of land on the property to each of their children and their children's spouses for them to build homes. One 1.3-acre parcel was gifted to Ronald and Sharon Hollfelder and is owned by the Hollfelder Living Trust dated December 6, 2012; one 1.1-acre parcel was gifted to

and is owned by Lisa and Danny Stormer; and one 2.9-acre parcel was gifted to and is owned by Michael and Tera Hollfelder.[2]

¶5      In January 2020, ATC informed the parents that it intended to acquire an easement over a 7.49-acre strip on the parents' property to construct a high voltage transmission line.  In August 2021, ATC commenced condemnation proceedings under WIS. STAT. § 32.06 (2023-24), for the taking of the transmission line easement on the parents' property.[3]

¶6      We reproduce here, from the summary judgment materials, an aerial map showing the location of the parents' property, the transmission line easement over the parents' property, and the siblings' three parcels.  There is no dispute about what is reflected on this map.

---

[2]  For ease of reading, we will generally refer to Roger and Laura as "the parents," and to their children and their children's spouses—who are the plaintiffs and appellants in this case—collectively as "the siblings."  We will also generally refer to the land currently owned by the parents as "the parents' property" and to the land currently owned by the siblings as "the siblings' parcels."

We note that the parents' property has been in a family trust since 1996, with the parents as trustees and their three children as beneficiaries.  The siblings do not base their inverse condemnation claim on their status as beneficiaries of the family trust, or otherwise assert that their status as beneficiaries of the family trust is relevant to this appeal.

[3]  All references to the Wisconsin Statutes are to the 2023-24 version.



¶7      In April 2021, after ATC sent notification to the parents and before ATC commenced the condemnation proceedings, the parents and the siblings together recorded with the county register of deeds a document regarding the parents' property and the siblings' parcels titled "Easement of Air, Light, and View" (the "air, light, and view document" or, simply, "document").  We review this document in detail in the Discussion below.

¶8      In April 2022, the parents and the siblings initiated in the circuit court an appeal of the compensation awarded to the parents in the ATC condemnation proceedings concerning the transmission line easement, pursuant to WIS. STAT. § 32.06(10).  On ATC's motion for partial summary judgment, the court dismissed the siblings as plaintiffs, based on the court's determination that the property affected by ATC's transmission line does not include the siblings'

parcels. The court subsequently dismissed the case based on the stipulation of the remaining plaintiffs—the parents—and ATC.

¶9 In 2024, the siblings each filed separate suits against ATC alleging an inverse condemnation claim under WIS. STAT. § 32.10, and the cases were eventually consolidated. The consolidated complaints allege that ATC, by constructing its transmission line on the parents' property, unconstitutionally physically occupied the siblings' parcels by occupying what the siblings refer to as their easements on their parents' property established by the air, light, and view document, and that ATC did this without exercising the power of eminent domain. The complaints further allege that ATC's occupation of the siblings' easements has caused their parcels to lose value, and the complaints seek just compensation, litigation expenses and attorney fees, exemplary damages, and injunctive relief.

¶10 ATC moved for summary judgment dismissing the consolidated cases. The circuit court issued an oral ruling concluding that: the siblings fail to show that the transmission line easement physically occupies their parcels so as to establish a compensable taking; and the damages they seek "are at best damage to their [parcels] based on the taking on adjacent property, a loss which is a non-compensable consequential damage." The court entered an order granting ATC's motion for summary judgment and dismissing the consolidated cases. The siblings appeal.

## DISCUSSION

¶11 The United States and Wisconsin Constitutions provide that no private property shall be taken for public use without just compensation to the owner. *Brenner v. New Richmond Reg'l Airport Comm'n*, 2012 WI 98, ¶¶37-39, 343 Wis. 2d 320, 816 N.W.2d 291. In Wisconsin, the government and designated

business entities (including a corporation such as ATC constructing a transmission line) may acquire private property for public use "by various means, including gift, purchase at an agreed price, or condemnation." *Id.*, ¶40; WIS. STAT. § 32.02. A party condemning property for public use must act in conformity with the constitutional provisions on eminent domain and WIS. STAT. ch. 32. *Brenner*, 343 Wis. 2d 320, ¶40.

¶12  The procedure for the "acquisition of property in [Wisconsin] by condemnation" is set forth in WIS. STAT. ch. 32. WIS. STAT. § 32.04. Pertinent to the transmission line project here, if the owner of property that has been acquired by condemnation wishes to contest the amount of compensation awarded, the owner may file an action seeking additional compensation under WIS. STAT. § 32.06(10). If the owner wishes to contest the condemnor's right to take property for a reason other than the amount of compensation offered, the owner may file a right-to-take action under § 32.06(5). *See Hanson Revocable Trust v. American Transmission Co.*, 2024 WI App 55, ¶19, 413 Wis. 2d 686, 12 N.W.3d 867 (explaining that actions under § 32.06(5) are commonly referred to as "right-to-take" actions). If the owner alleges that an entity with condemnation powers actually took the owner's property without exercising its condemnation power under the procedures set out in ch. 32, the owner's recourse is to file an inverse condemnation claim under WIS. STAT. § 32.10 to recover just compensation for the taking. § 32.10 ("If any property has been occupied by a person possessing the power of condemnation and if the person has not exercised the power, the owner, to institute condemnation proceedings, shall present a verified petition to the circuit judge of the county wherein the land is situated asking that such proceedings be commenced."); *E-L Enters., Inc. v. Milwaukee Metro. Sewerage Dist.*, 2010 WI 58, ¶36, 326 Wis. 2d 82, 785 N.W.2d 409.

¶13    Here, the siblings have filed inverse condemnation claims under WIS. STAT. § 32.10, seeking just compensation for ATC's alleged taking, without exercising the power of condemnation, of the interest in their parents' property that they assert they own by virtue of the air, light, and view document.  As stated, the circuit court entered summary judgment dismissing their claims.[4]

¶14    We review de novo a circuit court's decision to grant summary judgment.  *Grygiel v. Monches Fish & Game Club, Inc.*, 2010 WI 93, ¶12, 328 Wis. 2d 436, 787 N.W.2d 6.  Whether conduct constitutes a taking of private property without just compensation is a question of law that we also review de novo.  *E-L Enters.*, 326 Wis. 2d 82, ¶20.

¶15    To maintain an inverse condemnation claim, the claimant must demonstrate four factors: "(1) a property interest exists; (2) the property interest has been taken; (3) the taking was for public use; and (4) the taking was without just compensation."  *Adams Outdoor Advert.*, 382 Wis. 2d 377, ¶21.  When, as here, it is not disputed that the alleged taking was for public use and that ATC did not compensate the siblings for any damages sustained due to construction of the transmission line, the issues on appeal are (1) whether a compensable property

---

[4] ATC did not argue in the circuit court, and does not argue on appeal, that the siblings' inverse condemnation claim is precluded or otherwise affected by the siblings' failure to appeal their dismissal as plaintiffs on summary judgment from the case challenging the compensation awarded to the parents in the condemnation proceedings under WIS. STAT. § 32.06(10).  A successful argument to that effect in *Koskey v. Town of Bergen*, 2000 WI App 140, 237 Wis. 2d 284, 614 N.W.2d 845, was affirmed on appeal.  *See id.*, ¶¶2-5 (affirming dismissal of inverse condemnation action filed by plaintiffs who claimed ownership of land that Town had taken to widen a road and had determined was owned by the plaintiffs' parents; and ruling that the plaintiffs' sole remedy was to appeal the lack of a compensation award to them in the previous condemnation proceedings awarding compensation to their parents, because the remedy under WIS. STAT. § 32.10, which applies only when a person possessing the power of condemnation has not exercised the power, was not available to the plaintiffs).  Because ATC has made no such argument, we do not consider this topic further.

interest exists, and if so, (2) whether that property interest was taken. *See id.*, ¶22. In addressing whether a compensable property interest exists, we "must first identify the precise property interest at issue" and then determine whether that property interest "is based on a right recognized under … takings jurisprudence." *Id.*, ¶23.

¶16     We conclude that the document on which the siblings rely does not convey an easement, but it does create a restrictive covenant. However, we also conclude that the siblings fail to show that the restrictive covenant establishes a compensable property interest, and therefore we need not address whether ATC took the property interest. *See id.*, ¶46 (explaining that there is no need to address whether a property interest was taken when the claimant fails to establish that a property interest exists). This is because the siblings fail to cite legal authority showing that the restrictive covenant establishes a property interest of the siblings in the air, light, and view on their parents' property—over which the transmission line easement is located—that is based on a right recognized under takings jurisprudence.

## I.  The claimed property interest at issue

¶17     In order to identify the claimed property interest at issue, we must interpret the air, light, and view document that the siblings argue establishes that property interest. The siblings assert that the document conveys to them an appurtenant easement, or creates a restrictive covenant, that establishes for them an enforceable property interest in the air, light, and view on their parents' property. As we now explain, the document does not create an easement, but it does create a restrictive covenant, as those terms are defined in the case law.

9

### A. Legal principles governing construction of the document

¶18 We discern the essential nature of an agreement from the language used in the document, not from its title or form. *See Mnuk v. Harmony Homes, Inc.*, 2010 WI App 102, ¶17, 329 Wis. 2d 182, 790 N.W.2d 514 (looking at language, not title or form, to determine that a document granted an easement and was not a contract). The first step in construing such a document "'is to examine what is written within [its] four corners …, for this is the primary source of the intent of the parties.'" *Grygiel*, 328 Wis. 2d 436, ¶20 (quoted source omitted); *see also Konneker v. Romano*, 2010 WI 65, ¶26, 326 Wis. 2d 268, 785 N.W.2d 432 (when interpreting an instrument creating an easement, we look within the four corners of the instrument); *Nordstrom v. Kane*, 2021 WI App 71, ¶17, 399 Wis. 2d 522, 966 N.W.2d 91 (we determine the meaning of a restrictive covenant by the words it actually uses). If the language within the four corners of the document is unambiguous, this court "will not look further." *Grygiel*, 328 Wis. 2d 436, ¶20; *Forshee v. Neuschwander*, 2018 WI 62, ¶18, 381 Wis. 2d 757, 914 N.W.2d 643 (if the meaning of a restrictive covenant can be clearly ascertained from its words, we will enforce the restriction).

¶19 The interpretation of "a written document affecting land … is a question of law that we review independently." *Solowicz v. Forward Geneva Nat'l, LLC*, 2010 WI 20, ¶13, 323 Wis. 2d 556, 780 N.W.2d 111; *see also Grygiel*, 328 Wis. 2d 436, ¶12 (interpreting the language of a recorded document purporting to grant an easement is a question of law that we review independently); *Kapinus v. Nartowicz*, 2022 WI App 39, ¶¶20-21, 404 Wis. 2d 19, 978 N.W.2d 216 (whether an instrument such as a deed is ambiguous, and the construction of an unambiguous instrument such as a deed, are questions of law that this court reviews independently); *Zinda v. Krause*, 191 Wis. 2d 154, 165,

528 N.W.2d 55 (Ct. App. 1995) (whether the language of a restrictive covenant is ambiguous, and the interpretation of an unambiguous restrictive covenant, are questions of law that we review independently); *Forshee*, 381 Wis. 2d 757, ¶14 (same).

### B.  The language of the document

¶20    As stated, the document at issue is titled "Easement of Air, Light, and View."  It provides that "the parties desire to grant to each other an easement for the purposes of guaranteeing to one another that the aesthetics, character, and uses of their collective properties shall be preserved and maintained."  It then provides:

#### GRANT OF EASEMENTS

> The owners of the respective parcels [including the parents' property and the siblings' parcels] … each quitclaim to each of the other owners and the other parcels a perpetual, nonexclusive, appurtenant easement, to run with the land, of air, light, and view, so that no structure or use shall be allowed to occur which would obscure or degrade the views, light, movement of air, or otherwise degrade the rural residential aesthetics or character of any of the parcels.  The [p]arcels are intended together to be a rural residential and agricultural estate upon which only rural residential and agricultural uses shall be permitted.

> These easements are intended to guarantee, to the extent possible, the preservation of the rural residential estate character of the [p]arcels….

### C.  Whether the document conveys an easement

¶21    "[A]n easement can be created by any language expressing an intent to create an easement and 'has been defined in Wisconsin as a liberty, privilege, or advantage in lands, without profit, and existing distinct from the ownership of the

land.'" ***Kapinus***, 404 Wis. 2d 19, ¶24 (quoted source omitted). Here, the air, light, and view document purports to grant an "appurtenant easement." "Appurtenant" means that the rights granted by the easement are tied to the ownership of a particular parcel of land. ***Grygiel***, 328 Wis. 2d 436, ¶14. An appurtenant easement "creates two distinct property interests—the dominant estate, which enjoys the privileges as to [another's] land granted by an easement, and the servient estate, which permits the exercise of those privileges" on that land. ***AKG Real Est., LLC v. Kosterman***, 2006 WI 106, ¶3, 296 Wis. 2d 1, 717 N.W.2d 835. In other words, the dominant estate is the easement holder, and the servient estate is the owner of the land on which the easement is located. ***Mnuk***, 329 Wis. 2d 182, ¶17 n.8.

¶22 A great deal of case law, some of which we now cite in a list, firmly establishes that an easement is generally defined by the particular uses that the easement allows. That is, these cases express the respective rights and obligations of the dominant estate (easement holder) and the servient estate (landowner) in terms of the dominant estate's use of the servient estate's land subject to the easement, for the purpose stated in the easement. *See, for example*:

- ***S.S. Kresge Co. of Mich. v. Winkelman Realty Co.***, 260 Wis. 372, 376, 50 N.W.2d 920 (1952) ("an easement can be *used* only in connection with the [servient] estate" (emphasis added));

- ***Hunter v. McDonald***, 78 Wis. 2d 338, 343-44, 254 N.W.2d 282 (1977) ("[t]he *use* of the easement must be in accordance with and confined to the terms and purposes of the grant"; the owner may use the land but "not unreasonably interfere with the *use* by the easement holder"; and statements "of the servient owner's rights and duties virtually always phrase[] [this] duty in terms of protecting the easement holder's right to *use* the easement for the purpose for which it is created" (emphasis added));

- *Krepel v. Darnell*, 165 Wis. 2d 235, 244-45, 477 N.W.2d 333 (Ct. App. 1991) (the owner of land subject to an easement may *use* the owner's land over which the easement is granted);

- *Stoesser v. Shore Drive P'ship*, 172 Wis. 2d 660, 667, 670, 494 N.W.2d 204 (1993), *superseded by statute on other grounds*, WIS. STAT. § 30.133 (an easement grants "only the right to a limited *use* of the land of another" and conveys "an interest in the land to *use* the land in accordance with the terms of the easement" (emphasis added));

- *Figliuzzi v. Carcajou Shooting Club of Lake Koshkonong*, 184 Wis. 2d 572, 588, 516 N.W.2d 410 (1994) (The owner of property subject to an easement "may make all proper *use* of the land," but "may not unreasonably interfere with the *use* by the easement holder," and has the "duty to protect the easement holder's right to *use* the easement for the purpose for which it was created." (emphasis added));

- *Hunter v. Keys*, 229 Wis. 2d 710, 714, 600 N.W.2d 269 (Ct. App. 1999) ("'The *use* of the easement [by the easement holder] must be in accordance with and confined to the terms and purposes of the grant.'" (emphasis added) (quoted source omitted));

- *Gojmerac v. Mahn*, 2002 WI App 22, ¶19, 250 Wis. 2d 1, 640 N.W.2d 178 (2001) (an easement conveys to the easement holder "only a right to *use* the land [subject to the easement] consistent with the general property rights of the" owner of the land (emphasis added));

- *McCormick v. Schubring*, 2003 WI 149, ¶8, 267 Wis. 2d 141, 672 N.W.2d 63 (the dominant estate "has the right to *use* the land of another" and the servient estate "permits the exercise of that *use*" (emphasis added));

- *Grygiel*, 328 Wis. 2d 436, ¶¶14, 19 (the dominant owner obtains "'a right to *use* the land consistent with the general property rights of the servient owner'" and "in accordance with the express terms of the easement grant" (emphasis added) (quoted source omitted));

- *Savage v. American Transmission Co.*, 2013 WI App 20, ¶1, 346 Wis. 2d 130, 828 N.W.2d 244 ("An easement provides a nonpossessory right to *enter and use* land in the possession of another that obligates the landowner not to interfere with the *uses*

authorized by the easement." (emphasis added) (citing RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 1.2 (2000)));

- *Garza v. American Transmission Co.*, 2017 WI 35, ¶23, 374 Wis. 2d 555, 893 N.W.2d 1 ("The dominant estate holder's '*use* of the easement must be in accordance with and confined to the terms and purposes of the grant.' Any *use* not in accordance with the specific right to *use* granted in the easement is outside the easement's scope and thus prohibited." (emphasis added) (citation omitted));

- *Kapinus*, 404 Wis. 2d 19, ¶24 (an easement conveys "'only the right to a limited *use* of the land of another'" (emphasis added) (quoted source omitted)).

¶23 Here, most pertinently, the document addresses how land can be used, but it does not grant the siblings, who are the asserted holders of an easement over the parents' property, any right to enter or use the parents' property; nor, more generally, does the document convey to the parents and each of the siblings, who are the asserted easement holders over the parts of the land that they do not own, any right to use those parts of the land. *See Savage*, 346 Wis. 2d 130, ¶1 ("[a]n easement provides a nonpossessory right to enter and use land in the possession of another"). Instead, the document describes how the parents and siblings shall each use their own land for the purpose stated in the document—to protect the air, light, and view on all of the land. Specifically, the document states that the parents shall permit on their property, and each sibling shall permit on the sibling's parcel, "only rural residential and agricultural uses" that do not "obscure or degrade the views, light, movement of air, or otherwise degrade the rural residential aesthetics or character of" the parents' property and the siblings' parcels.

¶24 In addition, other typically descriptive terms for the rights conveyed via an easement, such as "reserved" and "privileges," are missing from the

document. *See Kapinus*, 404 Wis. 2d 19, ¶27 (reasoning that the terms "reserved" and "privileges" in a plat confirmed that the plat drafter intended to convey an interest that was in the nature of an easement). It is true that the inclusion of the term "the use of" in the plat in *Kapinus* also supported this court's conclusion that the plat conveyed an interest in the nature of an easement. But, the plat referred to "the use of lot owners in [the] plat" of the land over which the lot owners could exercise the specified privileges. *Id.*, ¶¶7, 27. Here, the document contains no reference to the parties' uses of the others' land over which the non-owning parties can exercise specified privileges.

¶25 For these reasons, we conclude that the air, light, and view document does not convey to the siblings an interest in their parents' property that is in the nature of an appurtenant easement.

¶26 The siblings offer no developed argument to the contrary. Specifically, the siblings do not analyze the actual language of the document or support with citation to relevant legal authority their conclusory assertion that the document conveys an easement to them.

¶27 The siblings note that one Wisconsin case, *Prah v. Maretti*, 108 Wis. 2d 223, 321 N.W.2d 182 (1982), describes an "easement for light" as an "'easement.'" *See id.* at 233. In that case, our supreme court reviewed the history of the protection of a landowner's access to sunlight under the common law, and the description the siblings now cite is contained in that historical review. *Id.* at 233-39. After completing that review, the court concluded that a landowner could assert a private nuisance claim for unreasonable obstruction of access to sunlight. *Id.* at 240. The siblings do not explain how that case helps determine whether the document here conveys an easement.

¶28  The siblings briefly quote a statement in one non-Wisconsin case, *World Species List - Natural Features Registry Institute v. Reading*, 913 N.E.2d 925 (Mass. Ct. App. 2009), that "[t]he right to have land not built upon, for the benefit of the light, air, etc. of neighboring land, may be made an easement, within reasonable limits." *See id.* at 928-29.  But the siblings do not explain how that general statement provides persuasive authority for a determination here that the document as worded conveys an easement under Wisconsin law.

¶29  In sum, the siblings fail to show that the air, light, and view document conveys an easement as that term is defined by controlling Wisconsin case law.

### B.  *Whether the document creates a restrictive covenant*

¶30  Generally, "'[a] restrictive covenant is a negative covenant that limits permissible uses of land.'"  *Forshee*, 381 Wis. 2d 757, ¶15 (quoted source omitted).  Thus, a deed that conveys land and contains a clause that restricts the use of the land conveyed does not create an easement in the land conveyed; instead, the title passes to the purchaser of the land subject to the restriction. *Polebitzke v. John Week Lumber Co.*, 157 Wis. 377, 381-82, 147 N.W. 703 (1914) ("[A] grant of land coupled with a restriction as to use conveys the fee and not a mere easement in the thing granted.").

¶31  Here, the air, light, and view document provides that each of the owners of the parents' property and the siblings' parcels shall permit on their respective properties only rural residential uses.  Because the document limits permissible uses of the land by the owners of the land, we conclude that the document creates a restrictive covenant as defined by our supreme court in *Forshee*.  *See Forshee*, 381 Wis. 2d 757, ¶15.

16

¶32    ATC takes the position throughout its briefing that the document creates a restrictive covenant. The siblings do not develop an argument to the contrary. More specifically, they do not apply relevant legal authority to the language in the document, to explain why the document does not create a restrictive covenant. Instead, as we discuss in the next section, for the most part they simply assume that the document creates a restrictive covenant and, with that assumption, cite either inapt Wisconsin case law that addresses whether restrictive covenants create enforceable property rights, not whether restrictive covenants create compensable property interests, or unpersuasive non-Wisconsin case law.

## II. Whether the restrictive covenant created by the air, light, and view document establishes a property interest that is based on a right recognized under takings jurisprudence

¶33    We now briefly explain the nature of the property right created by a restrictive covenant under Wisconsin law and then address whether the siblings show that the restrictive covenant here establishes a compensable property interest that is based on a right recognized under takings jurisprudence. As we explain, we conclude that the siblings fail to make that showing for two reasons. First, there is no Wisconsin case law establishing that a restrictive covenant is a property interest that is compensable if taken for public use. Therefore, we would be announcing a new rule were we to adopt that conclusion. Second, the two non-Wisconsin federal court cases cited by the siblings do not persuade us that we should announce such a new rule based on the restrictive covenant here because: (1) the cases do not offer legal analysis that persuasively explains their shared broad conclusion that restrictive covenants under the applicable state law establish a compensable property interest; (2) the cases address restrictive covenants that were conveyed via deeds or plats and the document here does not convey the

restrictive covenant; and (3) unlike the covenants in those cases, the covenant here, by including the qualifying language "to the extent possible," does not impose an absolute restriction.

*A. A restrictive covenant may create an enforceable property right under Wisconsin law.*

¶34    As the siblings note, Wisconsin cases establish that a restrictive covenant may create an "enforceable" property right, in the sense that the restriction may be enforced against the owner of land that is subject to the restriction to enjoin that owner from using the land in violation of the restriction. As our supreme court has recently explained, a restrictive covenant that runs with the land "becomes a servitude on the land," which may be enforceable against both current and future owners of the land if the restriction is "'expressed in clear, unambiguous, and peremptory terms.'"  *Forshee*, 381 Wis. 2d 757, ¶¶15-16 (quoted source omitted); *see also* ***Boyden v. Roberts***, 131 Wis. 659, 668, 111 N.W. 701 (1907) (an agreement making a covenant running with the land passes the right to enforce the restriction to "any grantee" as "against any other grantee" of land subject to the restriction).

*B. No Wisconsin case supports the siblings' assertion that a restrictive covenant establishes a compensable property interest.*

¶35    The siblings cite a number of Wisconsin cases that address restrictive covenants, but none of these cases establish that a restrictive covenant is recognized as a property interest that is compensable as part of a takings proceeding.

¶36    All but one of the Wisconsin cases that the siblings cite establish that a restrictive covenant that is included in the conveyances of lots in a plat,

subdivision, or tract pursuant to a general plan or scheme of development, is a property right that may be enforced in actions against one owner of a lot in a plat or subdivision by other owners of lots in the plat or subdivision. *See, for example*, *Forshee*, 381 Wis. 2d 757, ¶¶1-2, 4 (owners of lots in subdivision sued owner of one lot in subdivision using property for short-term rentals, seeking to enforce restrictive covenant in deed prohibiting "commercial activity"); *Hall v. Church of the Open Bible*, 4 Wis. 2d 246, 247-48, 89 N.W.2d 798 (1958) (owners of land in plat sued owner of one lot in plat planning to use property for a church, seeking to enforce restrictive covenant providing that "[n]o lot shall be used except for residential purposes"); *Bubolz v. Dane County*, 159 Wis. 2d 284, 290-93, 464 N.W.2d 67 (Ct. App. 1990) (owners of land in subdivision sued owner of one lot in subdivision using property for electrical contracting business, seeking to enforce restrictive covenant providing, "Not more than one (1) single family residence shall be constructed on said premises"); *Crowley v. Knapp*, 94 Wis. 2d 421, 423, 427, 429, 288 N.W.2d 815 (1980) (owners of land in tract sued owner of one lot in tract planning to use property for a group home for developmentally disabled adults, seeking to enforce restrictive covenant in all deeds conveyed in the tract, which restricted the use of the lots to "the construction of one single family dwelling … for residential purposes").

¶37 In only one case cited by the siblings did our supreme court consider a claim for damages for a taking based on a use prohibited by a restrictive covenant, but the court resolved the claim without deciding whether a restrictive covenant establishes a compensable property interest. *See Fuller v. Town Bd. of Madison*, 193 Wis. 549, 551-52, 214 N.W. 324 (1927). In that case, all deeds conveying parcels in a plat limited the uses of the parcels to private dwellings. *Id.* at 550. The owner of one lot in a block in the plat sued the town seeking damages

resulting from the town's use of a lot in another block in the plat for a road. *Id.* The court stated, "That the owner of each lot in the plat had a property right in each and every other lot in the plat by virtue of the restrictive covenants referred to, is well established." *Id.* at 551. However, the court continued, "There is a division of authority in this country as to whether such covenants constitute property for which compensation must be made.… But whether the owners of adjacent lots are entitled to compensation by the town by reason of these restrictive covenants, we do not deem it necessary here to decide." *Id.* at 551-52.[5]

¶38    The siblings do not cite, and our limited research does not disclose, a Wisconsin case that has decided that question. Indeed, the siblings acknowledge that there is no Wisconsin case law establishing that a restrictive covenant creates a property interest that is compensable if taken. Accordingly, the siblings effectively ask that we announce a new rule, based on non-Wisconsin case law.

*C. The non-Wisconsin cases cited by the siblings are not persuasive.*

¶39    The siblings cite non-Wisconsin case law applying the law of other states and adopting what the siblings refer to as "the majority view" of courts in other states, that a restrictive covenant creates a property interest that is compensable if taken. Specifically, the siblings cite two federal court cases

---

[5] The siblings also argue that our supreme court essentially adopted the rule that a restrictive covenant creates a compensable property right in *Bino v. City of Hurley*, 273 Wis. 10, 76 N.W.2d 571 (1956). But, the court in that case did not address whether a restrictive covenant can create a property interest that is compensable in a takings proceeding. The court ruled only that a city ordinance which prohibited, among other things, using a lake for bathing, boating, or swimming unconstitutionally took the riparian rights of the owner of land on the shore of the lake. *Id.* at 11-13, 21-22. It is true that the court cited in passing a Michigan case that addressed restrictive covenants, but it did not purport to adopt the Michigan case as Wisconsin law. *Id.* at 20. As a result, *Bino* leaves us with no direction on the topic of whether the document here creates a compensable property interest.

adopting this view, one applying Indiana law and one applying Maine law. As we explain, these cases do not provide persuasive authority for adopting that view as the rule in Wisconsin, regarding the restrictive covenant at issue here.

¶40   In *Daniels v. Area Plan Commission*, 306 F.3d 445 (7th Cir. 2002), the court addressed claims seeking injunctive relief against a plan commission by owners of a lot in a platted subdivision, all of which were subject to a restrictive covenant in the plat providing that, "No building other than a single[-]family dwelling and a private garage shall be built on any one lot." *Id.* at 449-50. The plan commission vacated the restrictive covenant on other lots in the plat and authorized commercial development on those lots. *Id.* at 450. The federal circuit court stated that, under Indiana law, a restrictive covenant is a compensable property interest. *Id.* at 459. The court stated that the plan commission unconstitutionally took the lot owners' property rights by vacating the restrictive covenant for a private purpose and the court affirmed an injunction preventing the plan commission from vacating the restrictive covenant. *Id.* at 459, 467-69.

¶41   In *United States v. Certain Land in the City of Augusta*, 220 F. Supp. 696 (D. Me. 1963), the court addressed a claim by owners of lots in a recorded plat of a residential development against the United States for condemning certain lots in the subdivision for a post office, seeking compensation for the taking of their rights by virtue of a restrictive covenant in the deeds conveying the lots, which prohibited the lots from being used for commercial or industrial purposes. *Id.* at 697-98. The district court concluded that, under Maine law, "the claimants did have a compensable interest in the land taken … by virtue of the restrictive covenants in their deeds." *Id.* at 701.

¶42      In each case, the federal court applying state law concluded that the restrictive covenant at issue created a compensable property interest because the applicable state law provided that restrictive covenants create an enforceable right. *See Daniels*, 306 F.3d at 459; *City of Augusta*, 220 F. Supp. at 699-700. The siblings argue that, because a restrictive covenant may be an enforceable property right under Wisconsin law, this court should also conclude, as these federal courts did, that it creates a compensable property interest. We reject the siblings' argument based on these two cases because: (1) the two cases did not offer legal analysis that persuasively explained their broad shared conclusion; (2) the cases addressed restrictive covenants that were conveyed via deeds or plats and the document here does not convey the restrictive covenant; and (3) unlike the covenants in those cases, the covenant here, by including the qualifying language "to the extent possible," does not impose an absolute restriction.

¶43      The federal courts in these two cases stated the conclusions we have just summarized. But they did not explain a logical connection from an enforceable property right under state common law to a compensable property interest under constitutional takings law, beyond citation to state law cases that themselves lacked such an explanation. *See Daniels*, 306 F.3d at 459; *City of Augusta*, 220 F. Supp. at 699-700. Nor do the siblings fill in the missing connection. Without such an explanation, these cases do not persuade us to adopt such a rule under Wisconsin law.

¶44      Further, even if we were to adopt the rule from the two cited federal court cases, the siblings do not show how its application here would result in a compensable property interest in this case. That is, the two cases would be unpersuasive because of at least two material distinctions between the restrictive covenants in those cases and the restrictive covenant here.

22

¶45    One distinguishing fact is that the two cases addressed restrictive covenants that were conveyed via deeds or plats.  Here, however, the document does not convey the restrictive covenant, nor is there a platted subdivision or its equivalent in terms of showing, under Wisconsin law, a general plan or scheme of development.  *See* **Hall**, 4 Wis. 2d at 248 ("a covenant restricting land to residential use, inserted by the proprietor in a conveyance of … lands, inures to the benefit of all the purchasers where it is inserted for the purpose of carrying out a general plan or scheme of development").  In the absence of Wisconsin case law addressing the nature of the rights created by a restrictive covenant that has not been conveyed via a deed or plat, the siblings do not provide an explanation, rooted in logic or Wisconsin property law, that this is an immaterial distinction.

¶46    Another distinguishing fact is that, unlike the restrictive covenants in the two federal court cases, the covenant here does not impose an absolute restriction.  The air, light, and view document provides that the parents and the siblings shall permit only rural residential uses "to the extent possible."[6]  With this qualifying language, the document acknowledges that it might not be possible for one or more of the owners of land covered by the document to permit only rural residential uses on each owner's portion of the land, in furtherance of the goal of protecting the air, light, and view on all of the land.  In that case, the document preserves the permitted use restriction on whatever portions of the land remain.  The siblings cite no legal authority to support the proposition that a restrictive

---

[6] The document more fully states: "These easements are intended to guarantee, to the extent possible, the preservation of the rural residential estate character of the [parents' property and the siblings' parcels] and if any part of this document is found to be unenforceable, all enforceable parts of the document shall remain in full force and effect."

covenant which contains language such as "to the extent possible" establishes a property interest based on a right recognized under takings jurisprudence.

¶47    In sum, for all of the reasons stated above, the siblings fail to show that the restrictive covenant created by the air, light, and view document establishes a property interest based on a right recognized under takings jurisprudence.

¶48    In the absence of viable inverse condemnation claims, the siblings assert at most damage to the enjoyment and value of their own parcels resulting from ATC's transmission line easement on their parents' property.  However, our supreme court has ruled that such damages are "consequential damages" to property resulting from governmental action outside the claimant's property, which are not compensable under the state and federal takings clauses.  *E-L Enters.*, 326 Wis. 2d 82, ¶30.  The siblings assert that this "is not a consequential damage to neighboring property case."  But they base that assertion solely on their position that the air, light, and view document conveys an easement or creates a restrictive covenant that establishes a property interest based on a right recognized under takings jurisprudence.  Because we have rejected those positions, we do not consider the siblings' consequential damages assertion.

## CONCLUSION

¶49    For the reasons stated, we conclude that the siblings have failed to establish that the transmission line easement on their parents' property constituted an unconstitutional taking of an interest that the siblings own in that property and, therefore, we affirm the dismissal of their inverse condemnation claims.

*By the Court.*—Order affirmed.

Recommended for publication in the official reports.